## UNITED VERDE EXTENSION MINING CO. v. LITTLEJOHN.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1922.)

No. 3703.

1. **Appeal and error ⟐1170(3)—Claim by injured employee of lost time as special instead of general damages not prejudicial.**

That claim for loss of time on part of injured employee was allowed as special damages, instead of as an element of general damages, could not have prejudiced the master or affected his substantial rights, and judgment will not be reversed, in view of Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246).

2. **Damages ⟐37—Time lost proper element of recovery for personal injury.**

The pecuniary value of time lost by plaintiff in consequence of a personal injury is a proper element of recovery, where the existence and the amount of the loss is established with the requisite certainty.

3. **Master and servant ⟐285(5)—Injury in hazardous occupation, within Arizona statute, question of fact.**

Whether a smelter plant employee, working in the bull gang, placing bolts in a concrete pit, at the time of his injury, was employed in a hazardous occupation, and whether the injury by the breaking of the staging over the pit was caused by an accident arising out of and in the course of such employment, and was due to a condition or conditions of such occupation or employment, within Civ. Code Ariz. 1913, pars. 3154, 3155, 3156 (subdivisions 8, 10), and 3158, are questions of fact.

4. **Master and servant ⟐107(8)—Smelter plant employee held engaged in "hazardous occupation," within Arizona statute.**

A smelter plant employee, working in the bull gang, placing bolts in concrete in a pit near a sample mill, *held* engaged in a hazardous occupation, within Civ. Code Ariz. 1913, pars. 3154, 3155, 3156 (subdivisions 8, 10), and 3158.

5. **Master and servant ⟐285(5)—Injury in hazardous occupation, within Arizona statute, held for jury.**

Whether injury to a smelter plant employee, working about a concrete pit, into which he fell when the staging broke, was caused by an accident arising out of and in the course of a hazardous employment, and was due to a condition or conditions of such occupation or employment, without negligence on the servant's part, within Civ. Code Ariz. 1913, pars. 3154, 3155, 3156 (subds. 8, 10), and 3158, *held* for the jury.

6. **Master and servant ⟐96(1)—Smelter plant employee's injury held one "arising out of conditions of business," within Arizona statute.**

Injury to smelter plant employee by the breaking of a staging while carrying a 100-pound bolt to be placed in a concrete pit constructed as an addition to a sample mill used in crushing ore for the smelter, was one arising out of the conditions of employer's business, within Civ. Code Ariz. 1913, pars. 3154, 3155, 3156 (subds. 8, 10), and 3158, protecting workmen in dangerous occupations.

7. **Appeal and error ⟐1047(3)—Erroneous refusal to strike evidence held cured by instruction.**

Error of court in a personal injury action, in refusing to strike out evidence of plaintiff showing that defendant was insured against liability, was cured by an instruction not to consider such evidence.

8. **Damages ⟐208(3)—Evidence ⟐364—Permanency of injury held question for jury making mortality tables admissible.**

In action for personal injuries, *held*, that the question of permanent injury was sufficiently presented by the testimony to make it a question for the jury, and mortality tables were admissible.

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. **Damages** ⬨⬨⬨206(1)—**Personal examination by defendant's physicians of plaintiff held properly refused.**

Where plaintiff in a personal injury case exhibited his head to the jury showing the injury it had received as it then appeared, and on cross-examination defendant's counsel requested an examination of plaintiff's head by its physicians, and also an examination of plaintiff's physical condition generally, an objection by plaintiff's attorney was properly sustained.

10. **Trial** ⬨⬨⬨114, 311—**Jury may be reminded in argument and take cognizance of what every one else knows.**

Jurors may be reminded in argument of what every one else knows, and they may act on and take notice of those facts which are of such general notoriety as to be matters of common knowledge, and the court could permit plaintiff's counsel in action for personal injuries to argue and to ask the jury to determine whether the purchasing power of the dollar was less than formerly.

In Error to the District Court of the United States for the District of Arizona; William H. Sawtelle, Judge.

Action by John T. Littlejohn against the United Verde Extension Mining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The parties will be designated "plaintiff" and "defendant," as in the court below. The defendant, United Verde Extension Mining Company, was on and for some time prior to June 2, 1920, engaged in operating and conducting smelting and ore reduction works in Yavapai county, state of Arizona. The plant consisted of smelter, mills, shops, works, yards, plants, and factories where steam, electricity, and other mechanical powers were used to operate machinery and appliances in and about the smelter and ore reduction works. The plaintiff on June 2, 1920, was in the employ of the defendant, working in what is designated in the record as the "bull gang." He had been working in that gang since the smelter was started on August 1, 1919, and did all kinds of work around the yards and the general office, cleaning up, moving machinery, unloading cars, drilling concrete, swinging a jack-hammer, installing machinery—anything that the boss ordered him to do. At the time the plaintiff was injured he was working upon a concrete pit. This pit was 10 or 11 feet wide and about 8 feet deep. There were three planks laid side by side across the top of the pit. The planks were each 12 feet long, 1 foot in width, and 2 inches thick. The plaintiff and other employees were directed by defendant's foreman to install certain iron bolts in the concrete structure, and in accordance with the instructions the plaintiff took one of the iron bolts and walked out on the plank with the iron bolt in his arms, taking it to the place where it was to be installed. The iron bolt was about 4 feet in length and about 2 inches in diameter and weighed 100 pounds. The plank upon which plaintiff walked broke under the weight of the plaintiff and his load, precipitating him to the bottom of the pit. From this fall the plaintiff sustained injuries, resulting in damages which are made the subject of this action.

The plaintiff alleged in his complaint that the action was brought under and by virtue of the laws of the state of Arizona in such cases made and provided, viz. by virtue of the provisions of chapter 6 of title 14, Revised Statutes of Arizona of 1913; said chapter 6 aforesaid being entitled "liability of employers for Injuries to Workmen in Dangerous Occupations," and that plaintiff's employment at the time of the injury was a dangerous and hazardous occupation, because of risks and hazards which are inherent in such occupations, as defined by the terms and provisions of said chapter 6 of title 14, Revised Statutes of Arizona of 1913. To this complaint the defendant interposed a demurrer and answer, denying generally the allegations of the complaint, and alleging that if the plaintiff was injured, either as alleged in his complaint or otherwise, his injuries resulted from and were wholly caused by the negligence of plaintiff in failing to take that care and caution which a

⬨⬨⬨For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

man of ordinary prudence would take under similar conditions. The case was tried before a jury, and resulted in a verdict and judgment for $8,000. From this judgment the defendant brings the case to this court upon a writ of error.

Favour & Baker, of Prescott, Ariz., for plaintiff in error.
O'Sullivan & Morgan, of Prescott, Ariz., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1, 2] It is assigned as error that the court overruled certain motions made by the defendant relating to special damages claimed by the plaintiff for loss of time and wages because of his failure to get work between the date of the injury and the date of the trial. The claim for loss of time on the part of the plaintiff as special damages, instead of an element of general damages, may not be in accordance with the practice in Arizona. As to that we are not sufficiently advised; but, however that may be, it does not appear to have affected the substantial rights of the parties, and under section 269 of the Judicial Code, as amended by the Act of February 26, 1919 (40 Stat. 1181 [Comp. St. Ann. Supp. 1919, § 1246]), the objection must be disregarded in this court. The pecuniary value of the time lost by plaintiff in consequence of the injury is a proper element of recovery, where the existence and the amount of the loss is established with the requisite certainty. 17 C. J. § 106, p. 780; Wade v. Le Roy, 61 U. S. (20 How.) 34, 44, 15 L. Ed. 813; Vicksburg, etc., R. R. Co. v. Putnam, 118 U. S. 545, 554, 7 Sup. Ct. 1, 30 L. Ed. 257; District of Columbia v. Woodbury, 136 U. S. 450, 459, 10 Sup. Ct. 990, 34 L. Ed. 472; Texas & Pac. Ry. v. Volk, 151 U. S. 73, 79, 14 Sup. Ct. 239, 38 L. Ed. 78; Louisville E. & St. Louis R. R. v. Clarke, 152 U. S. 230, 242, 14 Sup. Ct. 579, 38 L. Ed. 422. Damages for loss of time up to the date of the trial may be recovered. 17 C. J. § 106, p. 781.

It is assigned as error that the court overruled defendant's demurrer, challenging the sufficiency of plaintiff's complaint in the particular that it failed to show that the plaintiff was employed in a hazardous occupation at the time of the injury. The same question is raised on a motion for a directed verdict and the refusal to give certain requested instructions as to a hazardous occupation. Paragraphs 3154 and 3155 of the act of the Legislature of Arizona, referred to in the complaint (Revised Statutes of Arizona of 1913, 1051), provide:

"Par. 3154. That to protect the safety of employees in all hazardous occupations in mining, smelting, manufacturing, railroad, or street railway transportation, or any other industry, as provided in said section 7 of article XVIII of the state Constitution, any employer, whether individual, association, or corporation, shall be liable for the death or injury, caused by any accident due to a condition or conditions of such occupation, of any employee in the service of such employer in such hazardous occupation, in all cases in which such death or injury of such employee shall not have been caused by the negligence of the employee killed or injured."

"Par. 3155. The labor and services of workmen at manual and mechanical labor, in the employment of any person, firm, association, company, or corporation, in the occupations enumerated in the next section hereof, are hereby declared and determined to be service in a hazardous occupation within the meaning of the terms of the preceding section.

"By reason of the nature and conditions of, and the means used and provided for doing the work in, said occupations, such service is especially dangerous and hazardous to the workmen therein, because of risks and hazards which are inherent in such occupations and which are unavoidable by the workmen therein."

### Subdivisions 8 and 10 of paragraph 3156 provide:

"The occupations hereby declared and determined to be hazardous within the meaning of this chapter are as follows:

* * * * * * * *

"(8) All work in or about * * * open pits, open cuts, * * * ore reduction works and smelters. * * *

"(10) All work in mills, shops, works, yards, plants and factories where steam, electricity, or any other mechanical power is used to operate machinery and appliances in and about such premises."

### Paragraph 3158 provides as follows:

"When in the course of work in any of the employments or occupations enumerated in the preceding section, personal injury or death by any accident arising out of and in the course of such labor, service and employment, and due to a condition or conditions of such occupation or employment, is caused to or suffered by any workman engaged therein, in all cases in which such injury or death of such employee shall not have been caused by the negligence of the employee killed or injured, then the employer of such employee shall be liable in damages to the employee injured, or, in case death ensues, to the personal representative of the deceased," etc.

[3] Whether the plaintiff at the date of his injury was employed by the defendant in a hazardous occupation, as defined by this Arizona statute, was in its final analysis a question of fact. It was also a question of fact whether the injury was caused by an accident arising out of, and in the course of, such labor, service and employment, and was due to a condition or conditions of such occupation or employment. The plaintiff testified that:

"On June 2, 1920, I was working in the bull gang under Mr. Wright as foreman; had been working in this gang since the smelter was started on August 1, 1919. I did all kinds of work, around the yards and the general office, cleaning up, moving machinery, unloading cars, drilling concrete, swinging a jack-hammer, installing machinery—anything like that, as ordered by the boss. The smelter plant consists of the smelter, sample mill, machine shops, and all those works. * * * We had to run concrete in for putting up the rolls. This concrete construction was an addition to the sample mill. The sample mill was used to crush ore for the smelter, and the crushers operate with motor power. I had not been working there the day before, but on June 2d five of us were taken over to the sample mill and we jacked up the rolls. Wright then told Clark and Stoven to go below and put the tops on the bolts that go through the concrete to hold it, and told me and the other boys to put in the bolts. I grabbed a bolt and went on the staging, and the plank cracked, and I didn't know any more until I was getting into the car, helped by two men, to go to the hospital. The bolt was about 4 feet long and 2 inches in diameter. I don't remember falling; I would not say I fell, because I do not know. The concrete pit was about 10 feet wide and 10 feet deep, where the boards crossed it; it was built as a conveyor to run ore from the rolls into the sample mill; that was why the end of the mill was cut out. I had to walk on the planks across the aisle to put in the bolt. There were three planks, side by side, 12 feet by 1 foot by 2 inches. I held the bolt up, the plank broke, and I lost consciousness until I was being put in the automobile to be taken to the company hospital."

The evidence on behalf of the defendant with respect to this feature of the case was that of a witness who was employed in the same gang with the plaintiff. He testified:

"This pit was outside the sample mill, at the end of the building. There was no power there. We were working on the construction, putting up the rolls. The planks were put across, so we could work back and forth across the pit."

[4, 5] The defendant contends that this evidence did not show that the plaintiff was engaged in a hazardous occupation in mining or smelting, or where power was used, and that the court should have so instructed the jury. We think it showed that plaintiff was employed by the defendant in a hazardous occupation within the scope and purpose of the statute; that is to say, he was employed in work "in and about an open pit" in an additional construction to the sample mill, and this sample mill was to be used to crush ore for the smelter, and the evidence showed that the crusher was operated by motor power. The work of construction in which the plaintiff was employed was necessary to enable the defendant to carry on its business of smelting ores, and the work was "in and about an open pit"—"ore reducing works and a smelter." We think the evidence showed that plaintiff was engaged in a hazardous occupation, as described by the statute; but it remained for the jury to determine whether the accident was due to a condition or conditions of such occupation, and whether the injury was caused by the negligence of the plaintiff. These questions of fact were submitted to the jury.

The court instructed the jury, among other things, as follows:

"I charge you, as a matter of law, that all work in and about mines, ore reduction works and smelters is a hazardous occupation within the meaning of the law. Therefore, if you believe, from a preponderance of the evidence, that the plaintiff, at the time he claims to have been injured, was working in and about open pits, open cuts, mines, ore reduction works, or smelters, he was at the time engaged in a hazardous occupation and that it comes within the meaning of the Employers' Liability Law. * * * The first question for you to determine is whether the plaintiff, at the time and place mentioned in the complaint, and while in the service and employment of the defendant, and in the course of his work in such employment, received the injuries, or any of the injuries, described, set forth in his complaint. If you find from the preponderance of the evidence that the plaintiff, in the course of his labor and while in the service or employment of the defendant, received the injuries, or any of the injuries complained of, then you will determine whether such injury was due to a condition or conditions of his occupation or employment, as those terms have been, or that term has been defined to you, and whether such injuries were caused by the negligence of the plaintiff. If you come to the conclusion from the evidence that the injuries were caused by his own negligence, of course, you need not go any further in the case; you stop right there and render a verdict for the defendant."

These instructions are fully supported by authority. In the case of Pellerin v. International Cotton Mills, 248 Fed. 242, 160 C. C. A. 320, the Circuit Court of Appeals for the First Circuit had before it substantially the same question we have here under consideration. That case arose under the New Hampshire Employers' Liability Act. Laws of New Hampshire of 1911, c. 163. The act declared it was applicable to workmen engaged in manual or mechanical labor in any

shop, mill, factory, or other place in connection with or in proximity to any hoisting apparatus or any machinery propelled or operated by steam or other mechanical power, in which shop, mill, factory, or other place five or more persons are engaged in manual or mechanical labor. The word "mill" had been construed by the New Hampshire courts as including, not only the buildings wherein the work is done, but everything appurtenant thereto. The Circuit Court of Appeals held that a carpenter, who under the terms of his employment might be engaged in manual labor or in connection with or in proximity to machinery in the mill, and had frequently been so engaged, was within the act, although his injury resulted from a fall from a platform adjoining and appurtenant to, but outside of, the mill buildings.

The court in this decision followed a decision of the Supreme Court of New Hampshire in Boody v. K. & C. Mfg. Co., 77 N. H. 208, 210, 90 Atl. 860, L. R. A. 1916A, 10, Ann. Cas. 1914D, 1280, where the same statute was involved as in the case in the federal court. In the Boody Case the deceased was employed to work around a manufacturing mill. Among other things his duties required him to clean the racks constructed to catch rubbish coming down the mill race or flume to defendant's mill. On the morning of the accident he was seen standing on a walk facing the flume and very near to the river, with his back to the river, trying to pull some brush out of the rack in the flume with an ordinary garden rake. Later his body was recovered from the river below the mill, and a broken rake was found in the flume, and a freshly broken rake handle was found in the river. The inference was that either the rake handle broke or that the brush on which he was pulling gave way suddenly, and that he lost his balance, and in falling struck his head on the rocks and was killed. The defendant company was held liable under the statute. The court, in passing upon the question of defendant's liability, said:

"In the final analysis, the defendants' contention is that the words 'workmen engaged in * * * work in any shop, mill, factory, or other place, on, in connection with, or in proximity to' power-driven machinery, are descriptive of an accident—not an employment—which will bring a workman within the operation of the act, or that those words were intended to limit the accidents that will entitle those engaged in such work to the benefits of the act. The act, however, says that it applies 'to workmen engaged in manual or mechanical labor in the employments described in this section'—not to those who are injured while engaged in any one of those employments by the particular risk which induced the Legislature to include those engaged in it within the operation of the act."

The case of Larsen v. Paine Drug Co., 218 N. Y. 252, 112 N. E. 725, in the New York Court of Appeals, was an appeal from an award of compensation under the Workmen's Compensation Law of New York (Consol. Laws, c. 67). The deceased was employed by a corporation in the capacity of "porter, elevator, and handy man." The commission found that the corporation was engaged in the business of "manufacturing and selling drugs and chemicals and medicines and pharmaceutical preparations at both retail and wholesale," and that while the deceased was employed by the corporation he engaged in the work of building a shelf near the elevator well, and while reaching into the elevator to obtain a board, which he had placed on the side of the well,

he lost his balance, fell down the elevator shaft, and was instantly killed. There was some question whether the corporation was engaged in a hazardous employment, as defined by the statute. The question was determined against the corporation. The second question was whether compensation could be recovered for the death of a person who at the time of his death was engaged in an act not immediately connected with the hazardous and characteristic feature of the business of the employer. The court in a lucid opinion held that compensation could be recovered in such case. The court said:

"Appellants' second proposition means that a person engaged generally in an employment which has been defined as hazardous cannot recover compensation for injuries received while performing some act not immediately connected with what might be deemed the hazardous and characteristic feature of the business, although such act was incident to the employment and necessary in prosecuting and carrying forward the business. To illustrate: In the present case it means that no award can be made because the employee was injured while building a shelf for use in the business, rather than engaged in the immediate process of manufacturing drugs and chemicals, although such shelf was entirely necessary in the prosecution of the business. We think this is too narrow a view of the statute, and would lead to limitations upon its application which were not intended or anticipated by the Legislature. It is not necessary to attempt to lay down a final and universal rule on that subject. We feel perfectly secure, however, in holding that where, as in this case, an employee is injured while performing an act which is fairly incidental to the prosecution of a business and appropriate in carrying it forward and providing for its needs, he or his dependents are not to be barred from recovery because such act is not a step wholly embraced in the precise and characteristic process or operation which has been made the basis of the group in which employment is claimed."

The defendant cites the opinion of this court in New Cornelia Copper Co. v. Espinosa, 268 Fed. 742, as holding that the law does not mean, when it says "in and about mines," that all men employed by the owner are in a hazardous occupation simply because they happen to be about the surface of a mine within the lines of the owner. In that case the evidence showed that the deceased was employed to work in a mine owned by the defendant, but he was not at work in the mine at the time of the explosion causing his death. He was on the surface, where no mining operations were being carried on by the defendant. The deceased built a fire in some wood on the surface in the morning before his working hours began in the mine. In the wood was powder or dynamite, which exploded, killing the deceased. The building of the fire by the deceased was his own voluntary act, and against the general instructions of the mine foreman. The accident did not arise out of or in the course of the labor, service, or employment of the deceased, and it was not due to a condition or conditions of such occupation or employment. In the present case the plaintiff was employed by the defendant to do the work he was engaged in doing when he was injured, and he was doing that work under the direction of defendant's foreman. The work was necessary and appropriate to enable the defendant to carry on its business of smelting ores, and the work was being done "in and about" the defendant's smelter. The risk attending such work was at common law a liability of the employer for

negligence in not providing a safe place for the employee to work and existed before the Employers' Liability Act.

In Consolidated Arizona Smelting Co. v. Egich (Ariz.) 199 Pac. 132, the plaintiff was injured while at work in defendant's mine breaking rocks with a hammer. The head of the hammer flew off the handle and struck plaintiff's right foot, breaking a toe. The suit was to recover damages from the mine owner for this injury. It was contended on behalf of the defendant that the action was to recover for the negligence of defendant in failing to supply the plaintiff with a safe tool, that the Employers' Liability Act covered only such risks as are inherent in the occupation, and that this limitation excluded accidents due to the employer's negligence. To sustain this position the defendant cited a number of cases decided by the Supreme Court of Arizona in which it was said:

"The risks and hazards must be inherent in the occupation before the employee may recover."

In the Egich Case the Supreme Court qualified its previous expression in this respect by saying:

"The condition or conditions that cause the accident resulting in injury or death may be inherent in the occupation, or they may arise from the manner in which the business is carried on. The conditions of the occupation in which the employee does his work involves, not only the place he works, but the tools with which he works, the one as much as the other. He cannot perform his work without tools, nor without being in the place assigned to him. * * * The only thing that will defeat the action and absolve the employer from liability is the negligence of the employee. If the injury or death be not caused by an accident due to a condition or conditions of the occupation, but is caused by the negligence of the employee, he cannot recover, nor can his personal representative or beneficiary. The only risk or hazard the employee assumes is his own negligence."

[6] We are of the opinion that the risk of the defendant in the present case arose out of the condition or conditions of its business as it was then being carried on in the necessary and appropriate construction of a concrete addition to the sample mill to be used in crushing ore for the smelter. We conclude that the plaintiff's injury in this case was within the statute.

[7] It is assigned as error that the court overruled defendant's motion that a mistrial be declared because of the testimony of the plaintiff concerning the company being insured (presumably against injury to employees). The plaintiff was a witness in his own behalf. In the course of his testimony he related a conversation between Mr. Thompson, the claim agent of the company, and himself, as follows:

"Then Mr. Thompson walked over to me, after the doctor got through examining me, and said, 'Littlejohn,' he says, 'I don't want you to think that I ain't to do—that I ain't going to do fair with you. I have no other orders only to treat the men fair.' He says: 'Mr. Kingdon gives me orders to treat his men all fair. They have them all insured, and just as soon as ever those pictures [X-ray pictures] are developed, I will go down and try to settle up with you, and I don't want you to think—' "

At this point counsel for defendant objected that—

"This is kind of a garrulous statement of gossip of what took place and has no bearing on the case. * * * I ask that the witness be questioned as to the issues involved here."

He requested that the statement that the company is insured be stricken out. The court overruled this objection, on the ground that there was no objection until after it was all stated. Counsel replied that he could not object to that; that it wasn't in response to any question. After some discussion the court adhered to his ruling. Subsequently the court excluded this testimony, saying:

"Now all that I exclude because in the first place any discussion by itself with the expectation of the efforts to make a satisfactory and mutual arrangement for settlement is never admissible in the trial of a law suit. People have a right to settle their differences and to make their peace and to avoid litigation, and any statement made by either party while that is in progress is never admissible in a lawsuit, and is no admission of fault or liability on the part of either, and the question as to whether these men were insured is wholly immaterial in this case. You can readily see why that might be so. In the first place, it might be a case where the insurance could never be collected, the insurance company might be insolvent, or they might refuse to pay, many reasons why that is not admissible, and therefore plaintiff's statement which was not called for by counsel on either side, and I didn't anticipate it when I permitted him to make a statement with reference to his physical condition, therefore you will not consider it at all for any purpose. Make up your verdict wholly independent of that statement."

We think this instruction to the jury before the plaintiff had closed his case removed any prejudicial impression, if any, that may have been made by the witness in his voluntary statement about insurance.

We think the observation of the Supreme Court of California in People v. Northey, 77 Cal. 618, 630, 19 Pac. 865, 870, with respect to an objection to remarks made by the court in the presence of the jury and subsequently struck out, is applicable here. The trial court corrected its mistake in the following instruction to the jury:

"I instruct you that it is your duty to ignore in your deliberations the remarks then made by the court, and that you must deal with the case on the law as it exists, and as the court states it to you, irrespective of your own opinion or any opinion the court might have as to the wisdom of the law."

The Supreme Court, commenting upon the sufficiency of the instruction, said:

"We think that these observations to the jury, made to them by the court when giving them directions by which to guide their conduct in the consideration of the case, were sufficient to remove all apprehension that the remarks of the court, above referred to, would have any effect on their minds prejudicial to the defendant. To hold otherwise would be to attribute to the jurors a lack of ordinary intelligence, and this we are bound to presume from their selection to try the cause they possessed. To hold that the members of the jury in whose presence the remarks were made could not lay them aside as something irrelevant to the business they were charged with, and disregard them entirely in the discharge of their functions, would be irrational and incredible. If men of ordinary intellectual endowments are incapable of such a mental operation, trial by jury may justly be regarded as a failure."

In Todd v. Boston Elev. Ry. Co., 208 Mass. 505, 506, 94 N. E. 683, 684 (Ann. Cas. 1912A, 1005), the Supreme Court of Massachusetts stated the rule as follows:

"It is a principle of practice in the trial of causes to a jury that an erroneous ruling made by the presiding justice either as to evidence or in the charge may be corrected at any stage, and if the ruling as made at last is sound, no exception lies. It must be assumed that the jury acted upon the state of the case finally submitted to them both as to evidence and instructions."

[8] The court admitted in evidence the American Mortality Tables to determine the probable duration of plaintiff's life. It was objected that there was no evidence that plaintiff's injury was permanent. Dr. J. B. McNally who examined the plaintiff about four months after his injury testified among other things that he—

"found a depression on the left side of his head in the posterior region, which was not sore; also noticed a fine or muscular tremor all over his body; his neck muscles were apparently very tender, slightly rigid where attached to the bone. I was not able to account for the tremor; he told me it had followed the injury and I concluded there was probably a concussion of the brain or some part thereof that may have set up the tremor."

He had examined him again within the last week before the trial. His nervous condition was very slightly exaggerated. The witness believed that the cells of the brain were disarranged and their physiological function disturbed. When asked by the defendant's attorney if that would continue, or whether it would clear up, the witness replied: "I think it will continue in a man of his age." There was testimony on the part of the defendant tending to show that the plaintiff was not permanently injured, but was afflicted with premature senility, which may have been produced by some cause other than the injury received from his fall into the concrete pit. We think the question of permanent injury was sufficiently presented by the testimony to make it a question for the jury, and that the mortality tables were properly admissible in that aspect of the case. The court instructed the jury substantially as in the recent case of United Verde Extension Mining Co. v. Koso (C. C. A.) 273 Fed. 369, 372, which instruction this court approved.

[9, 10] While plaintiff was on the witness stand he exhibited his head to the jury, showing the injury it had received as it then appeared. On cross-examination the defendant's counsel requested an examination of plaintiff's head by its physicians, and also an examination of plaintiff's physical condition generally because the injury to plaintiff's head had been placed in evidence. The objection by plaintiff's attorney to such an examination was properly sustained by the court. Union Pac. Ry. Co. v. Botsford, 141 U. S. 250, 11 Sup. Ct. 1000, 35 L. Ed. 734. In the course of plaintiff's argument to the jury, he said:

"Now we have asked for $10,000. You gentlemen know that $10,000 to-day is not worth as much as $5,000 four or five years ago."

Counsel for defendant objected to this line of argument. The court sustained the objection, in so far as it contained a statement of fact by counsel, but permitted counsel to argue and to ask the jury to de-

termine whether the purchasing power of the dollar was less than formerly. The court stated that the jury might bring to bear their own knowledge and experience in order to determine the question. Jurors may be reminded of what every one else knows, and they may act upon and take notice of those facts which are of such general notoriety as to be matters of common knowledge. Jones on Evidence, vol. 1, § 134 (135); United States v. American Gold Coin, 24 Fed. Cas. 780, No. 14,439.

The judgment of the District Court is affirmed.