441 P.2d 259

Maximo A. OANA, as surviving spouse of Mary Lamar Oana, Deceased, Individually and on behalf of Randolph, Bayani, Leta and Liza Oana, the minor children of Mary Lamar Oana, Appellants,

v.

Ira HASKELL and Fletcher Haskell, co-partners doing business as Haskell Linen Supply Co.; and Donald Earl Morrison, Individually and as an employee of said partnership, Appellees.

No. 2 CA–CIV 401.

Court of Appeals of Arizona.

May 21, 1968.

Rehearing Denied June 13, 1968.

Review Denied July 12, 1968.

494

Rees, Estes & Browning, by Paul G. Rees, Jr., Tucson, for appellants.

Holesapple, Conner, Jones, McFall & Johnson, by Donald E. Dickerman, Tucson, for appellees.

MOLLOY, Judge.

This appeal questions the propriety of granting a new trial to defendants in a wrongful death action. The plaintiff's decedent was killed while entering a through street from an unpaved side street. Our principal concern on appeal is whether the trial court wrongfully admitted the calculations of a person specializing in the "scientific reconstruction of accidents," which calculations were based upon the hypothesis that the plaintiff's deceased had stopped at a boulevard stop sign before entering the through street. There was no direct evidence to establish this hypothesis and there is much discussion in the briefs as to whether a presumption of due care on the part of the decedent was a bat " ' * * * flitting in the twilight * * * ' " or one " ' * * * disappearing in the sunshine of actual facts.' " [1]

The boulevard stop sign in question was set back approximately 25 feet to the east of the paved through street in question. The defendant Morrison was driving a heavily loaded laundry delivery truck north on the paved street (Park Avenue) and collided with the decedent's light passenger car on the pavement at the intersection of Park with Drexel, Tucson, Arizona. The view is unobstructed on all sides of the intersection. After the impact, the truck continued north along Park in a relatively straight course for some 120 feet and then rolled on its left side and skidded for an additional 28 feet. Decedent's car was knocked 116 feet north of the intersection and ended up 12 feet *east* of the pavement. (The car had been traveling *west*.)

The "accident reconstruction" witness who testified for the plaintiff concluded

---

1. Quotations are from Seiler v. Whiting, 52 Ariz. 542, 549, 84 P.2d 452, 455 (1938), which in turn was quoting from Mackowik v. Kansas City, St. J. & C. B. R. Co., 196 Mo. 550, 94 S.W. 256, 262 (1906).

from the extent and the kind of damage to both vehicles that the decedent's automobile was going less than 10 miles per hour at the time of impact. No complaint is made on appeal as to the admission of this testimony. This witness also testified, without objection, that at "normal acceleration" of the decedent's vehicle it would achieve a speed of 10 miles per hour easily within a distance of 20 to 25 feet and that, timewise, such a vehicle would have taken approximately 3.5 seconds to achieve this degree of acceleration in this distance. Also without objection, this witness gave to the jury a formula by which it could convert miles per hour into feet per seconds (by multiplying the miles per hour by 1.5).

The witness also testified, without objection, that if the northbound truck had been going at 45 miles per hour it would have covered 198 feet in 3½ seconds, at 50 miles per hour—257 feet, and at 55 miles per hour—282 feet. After this testimony was elicited, the following occurred:

"Q [by plaintiff's counsel] Would you have an opinion, then, and based upon these facts which you have given me, as to how far back Mr. Morrison's truck, the Haskell Linen Truck, would have been from this point of impact and at a point where the Dodge Dart was 3½ seconds east of it?

"MR. DICKERMAN [defendants' counsel]: If the Court please, I'm going to object.

"MR. REES:

"Q At 45 miles per hour?

"MR. DICKERMAN: It's irrelevant and immaterial, there is no 3½ seconds showing that anyone saw it 3½ seconds at impact.

"THE COURT: Overruled.

"A (By the witness) Yes, sir; it would be at 3½ seconds that you have written down there at 45 miles an hour, it would be 231 feet, and at 55—282 feet. So, in my opinion, it would be between that range of distances."

Thereafter, various calculations were developed from this same witness, again without objection, as to how far a vehicle at certain speeds would travel and what time would be consumed in traveling certain distances. Additionally, without objection, the witness testified as to what distances would be traveled at 45 miles per hour during the average reaction time of a driver responding to an emergency.

There were no other objections to this witness's testimony which are pertinent on appeal and no motion to strike any portion of this witness's testimony was made until the conclusion of all of the evidence, at which time defendants' counsel moved to strike " * * * certain testimony of Mr. Cady [accident reconstruction witness] in reference to this question about 3½ seconds time lag where he arrived at the various feet and distances. * * *" Defendants also moved to strike certain notations written by plaintiff's counsel on a sketch of the scene of the accident, admitted into evidence without objection for "illustrative purposes," which notations summarized the testimony of Mr. Cady as to how far a vehicle would travel at various speeds in 3.5 seconds. This motion was denied and the motion for new trial was predicated principally on the contention that the trial court erred in so doing.

The first reason given by the trial court for granting a new trial was that:

" * * * the Court erred in refusing to strike the testimony of Mr. Cady as to the 3½ seconds time lag from the stop sign to the pavement of South Park Avenue; * * *."

In supporting this order, reliance is taken by the defendants upon the decisions of In re O'Connor's Estate, 74 Ariz. 248, 246 P.2d 1063 (1952); Silva v. Traver, 63 Ariz. 364, 162 P.2d 615 (1945); and Seiler v. Whiting, 52 Ariz. 542, 84 P.2d 452 (1938). We do not construe these decisions as being supportive of the order granting a new trial.

We are not here concerned with the **problem of jury** instruction on a presump-

tion,[2] but rather with whether particular evidence should be stricken as having no probative value. Though Seiler v. Whiting decided that the presumption that a deceased used due care for his own protection was a "presumption" which "disappeared" when positive evidence was introduced to the contrary, the decision does not mandate that the trial court shut its eyes to all circumstantial evidence supporting a factual inference.

In *Seiler*, there was no such circumstantial evidence:

> "It is sufficient to say that there is nothing in the record upon which a jury could base a conclusion that defendant Whiting was guilty of any of the acts of negligence withdrawn from the consideration of the jury except, perhaps, certain presumptions as to due care on the part of the plaintiff."

52 Ariz. at 549–550, 84 P.2d at 455.

In *Silva*, the Court clearly indicates that the disappearance of the presumption does not eliminate factual inferences:

> "If the basic fact [the fact giving rise to the presumption] has sufficient value as evidence to support a rational inference as to the presumed fact, that is, if the basic fact constitutes circumstantial evidence, so that the presumption is one of fact rather than one of law, different duties devolve upon the court. But that situation is not before us."

63 Ariz. at 373, 162 P.2d at 619.

The view adopted by our Supreme Court in these landmark decisions was that of Dean Wigmore, who in his treatise made it very clear that because a presumption had "disappeared" did not mean that all accepted concepts of circumstantial evidence must also disappear:

> "For example, if death be the issue, and the fact of absence for seven years unheard from be conceded, but the opponent offers evidence that the absentee,

before leaving, proclaimed his intention of staying away for ten years, until a prosecution for crime was barred, this satisfies the opponent's duty of producing evidence, removing the rule of law; and when the case goes to the jury, they are at liberty to give any probative force they think fit to the fact of absence for seven years unheard from. It is not weighed down with any artificial additional probative effect; they may estimate it for just such intrinsic effect as it seems to have under all the circumstances." 9 Wigmore, Evidence § 2491, at 290 (3d ed. 1940).

That *O'Connor's Estate* is not greatly divergent from this view is attested by the following language:

> " * * * that the presumption completely vanishes upon the introduction of any evidence to the contrary. This rule has been enunciated by us in a number of cases. However, it is not necessary to apply it in this case for the reason that the absence of undue influence is established by clear and convincing evidence."

74 Ariz. at 260, 246 P.2d at 1071.

If *O'Connor's Estate* is not good law,[3] it is not because of a defect in the Wigmorian approach to the troublesome topic of presumptions, but rather in the Court's evaluation of the sufficiency of circumstantial evidence on undue influence. The same may be said of In re Pitt's Estate, 88 Ariz. 312, 356 P.2d 408 (1960), a subsequent decision following *O'Connor*.

In the case at bar, there is no need to go to any "presumption" to justify the expert's testimony as to the possibility of the deceased having stopped at this boulevard stop sign. The only evidence to indicate that she did *not* stop at this stop sign is the testimony of a person who purports to have seen the accident from approximately 1,000 feet away, across a brush-covered field.

---

2. An interesting, but completely separate question. See McCormick on Evidence § 314, at 663–664 (1954).

3. Udall, Arizona Law of Evidence § 192, at 422, calls the *O'Connor* decision "wrong," and its effect "harmful."

This witness, according to his testimony, was talking to his wife and a neighbor on the neighbor's trailer lot when the deceased's car passed by a block north of the witness, going west (further away from the witness) toward the fatal crash. He "continuously" watched this vehicle as it maintained constant speed until it ran the boulevard stop sign at approximately "20 to 25 miles an hour."

Further, the witness testified that he saw the truck (which was never closer to him than a long block away) between a "mile or half-mile" and a "half-block" (the trier of fact has his choice) prior to the accident, as it came from a perpendicular direction to that of the deceased's car and that "I know that he [the truck driver] was not exceeding the speed limit, which was 45 miles an hour." While this was occurring, the witness was "listening" to his wife's and a neighbor lady's conversation. His explanation for being able to record the events preceding this accident so well was that he has a "heavy habit" of watching cars since "I am a repossessor of automobiles—I look at every automobile."

For impeachment, there was the testimony of a witness who stated that he stood on the highest point in the vicinity of the intersection at which this witness stated he viewed this accident and that he was unable to see a car traveling along the road the decedent's car was traversing except for brief glimpses. Rehabilitative testimony was to the effect that from the exact spot which the witness testified he viewed the accident, it was possible to see only the top ("maybe a foot or a foot and a half") of a car being driven down this road, except "one blind spot" where the car disappeared from view for a short distance. At the stop sign, the rehabilitative witness testified he could see "the top of the car."

█ While the testimony of the purported eyewitness is believable, a trier of fact might very well reject it. As opposed to this testimony, the physical facts, as interpreted by the expert witness, indicate that the decedent's car was not traveling in excess of 10 miles per hour at the time of the collision and that no brakes were applied prior to the collision. The stop sign is 20 to 25 feet away from the edge of the pavement upon which this accident occurred. All drivers, not just deceased ones, normally stop at a stop sign. The speed of the vehicle and the distance involved would indicate a vehicle picking up speed from having stopped at a boulevard stop sign. A trier of fact is permitted to use in his deliberations matters of common experience, United Verde Extension Mining Co. v. Littlejohn, 279 F. 223 (9th Cir. 1922). If the proven facts tend in any degree to make a certain fact more probable than other possibilities, there is a permissible inference of the existence of that fact. See 1 Wigmore, Evidence § 38, at 428-431 (3d ed. 1940).

Here, the possibilities are limited. Either the deceased did or she did not stop at this particular stop sign. It is our view that the jury was not precluded by the evidence from finding that she stopped. If so, the expert's mathematical calculations based on this hypothesis may have been of some assistance in determining whether the defendants' driver was negligent in failing to maintain a proper lookout.

█ Much of the testimony now pointed to as damaging was admitted without objection. At the conclusion of the case, when the motion to strike was made, a ruling in favor of the defendants' position would have constituted a court ruling that the jury should not consider the possibility that the decedent stopped at this stop sign. The state of the evidence does not permit any such usurpation of the jury's function. Accordingly, the trial court's granting of a new trial on the basis of the admission of the 3.5 second testimony was not justified. Rogers v. Mountain States Telephone & Telegraph Co., 100 Ariz. 154, 412 P.2d 272 (1966).

In addition to grounding his ruling upon admission of this testimony, the trial court

also stated that the new trial was granted because:.

"* * * the verdict and judgment are not justified by the evidence."

This is substantially the same language used in *Rogers,* supra, which the Supreme Court held was not sufficient to comply with Rule 59(m), Rules of Civil Procedure, 16 A.R.S.[4] In *Rogers,* it was held that the failure to specify in detail the reasons for granting a new trial gave rise to the presumption that the trial court was in error in so doing. What showing is necessary to overcome this presumption is not spelled out, however. At one point the opinion suggests that if the appellate court were "* * * convinced that the jury verdict is incorrect," the trial court's decision would be affirmed.

The line of reasoning expressed in *Rogers* to arrive at the conclusion that the jury's verdict was not "incorrect" can be followed here. In *Rogers,* the Supreme Court evaluated the evidence to ascertain whether there was substantial evidence of negligence on defendant's part and, finding there was such, reversed the granting of a new trial. The Court appears to regard the jury's verdict, under these circumstances, to be conclusive of the issue of contributory negligence, for it disposes of this possible ground for granting a new trial in these words:

"The jury was instructed as to the defense of contributory negligence and obviously it decided this matter adversely to defendant."

100 Ariz. at 163–164, 412 P.2d at 278.

The situation is the same here. There is substantial evidence that the driver of the defendants' vehicle was exceeding the speed limit of 45 miles per hour and that he was not maintaining a proper lookout. Though we are convinced that decedent's negligence in failing to observe rules of the road pertaining to stop signs over-

shadows any negligence on the defendants' part, we cannot say as a matter of law that the jury's verdict was "incorrect." See Layton v. Rocha, 90 Ariz. 369, 368 P.2d 444 (1962).

Reversed and remanded with instructions to reinstate the judgment on the jury's verdict.

HATHAWAY, C. J., and COLLINS, Superior Court Judge, concur.

NOTE: Judge HERBERT K. KRUCKER having requested that he be relieved from consideration of this matter, Judge JOHN P. COLLINS was called to sit in his stead and participate in the determination of this decision.

---

4. "No order granting a new trial shall be made and entered unless the order specifies with particularity the ground or grounds on which the new trial is granted." Rule 59(m), R.Civ.P., 16 A.R.S.