## JAMES EDWARD CHANDLER *v.* STATE OF MARYLAND

[No. 495, September Term, 1968.]

*Decided September 10, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Frank Cannizzaro, Jr.,* for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Gerald A. Kroop, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

The appellant, James Edward Chandler, was convicted of first degree murder by a jury in the Criminal Court of Baltimore, Judge Thomas J. Kenney presiding. He was sentenced to life imprisonment.

Upon this appeal the appellant presents the following issues:

1) Whether the court erred in denying a motion for judgment of acquittal made at the end of the State's case; and whether there was sufficient evidence to sustain the conviction in light of the testimony as to self defense?

2) Whether the court erred in admitting into evidence a certain statement of the victim?

3) Whether the court erred in admitting into evidence a shotgun and shotgun shells seized by police?

4) Whether the court erred in denying a mistrial after certain statements were made to the jury by the State's attorney?

I

## EVIDENCE OF GUILT

On Sunday, October 1, 1967, at about 8:30 p.m., the appellant and the victim, George Graves, were in Jones' Tavern in Baltimore. Some unpleasantness developed between them and the appellant left the Tavern and returned to his home, approximately 1½ blocks away. A moment or two after the appellant left the Tavern, the deceased left. Shortly thereafter the deceased approached the appellant's house and was killed by a blast from a shotgun fired by appellant from an upstairs bedroom window. At trial varied stories of what occurred immediately prior to the shooting were offered.

Martha Day, who claimed to be an eyewitness to the shooting, testified that Graves chased the appellant into his house, then began pounding on appellant's outside doorway. The appellant appeared in an upstairs window and Graves, who had left the door and was standing with one foot on the sidewalk and the other foot in the street, shouted that he was going to whip the appellant on Monday and that he was going to whip the appellant every time he saw him. The appellant said to Graves, "Don't try to come in my house, Sol." and then shot him. Graves turned, walked about fifty feet, and fell to the sidewalk.

Christina Virginia Chandler, the appellant's wife, testified that Graves pounded on their door, that he later stopped pounding, and that she heard nothing further until the shot was fired.

The appellant testified that Graves pounded on the door for a time and then left. All was quiet for several minutes. The appellant, who at this time was sitting on a bed in the upstairs front bedroom, saw Graves walk along the other side of the street and then return across the street to appellant's house. Graves said, "I am going to kill you tonight. I changed my mind. I was going to whoop . . . [you], but I changed my mind. I am going to kill you tonight." The appellant replied, "Don't you come up here. If you come up here you leave me no al-

ternative but to shoot you." Graves started up the front steps of the house and had one foot on the sidewalk and the other foot on one of the steps when the appellant shot him. Graves then turned and ran up the middle of the street, then he "slooped and fell down." The appellant testified that he was frightened of Graves because Graves "had broke in a man's house and killed him in a recent year." He stated that when Graves began to come up the stairs to the front door of the house he did not know whether Graves was coming in or was bluffing but that because of his fright he did not wait to find out. The appellant also testified that the shotgun always stood by the bedroom window and that he did not load the shotgun until Graves crossed the street.

Police officers testified that the distance from the upstairs bedroom window to the sidewalk in front of the house was eighteen feet seven inches; that the distance from the window to the chest of a man standing on the sidewalk was sixteen feet two inches; and that the distance from the sidewalk in front of the house to the spot where Graves fell was sixty feet. The only blood observed by police was at the spot where Graves was lying. The police officers also testified that the spread of the shot pattern in Graves' body was about thirty-three inches, which, on the basis of a test firing of the appellant's shotgun, would indicate that the appellant was approximately sixty feet from the victim at the time of the shooting. Test firing at a distance of sixteen feet produced a pattern spread of approximately eight inches. In addition, the autopsy report indicated that the pellets entered the victim's body at a thirty degree downward angle.

At the conclusion of the State's case, a motion for judgment of acquittal was made by the appellant, but denied by the trial court. Subsequent thereto the appellant offered evidence in his own behalf. He thus withdrew his motion. Md. Rule 755 (b) ; *Brooks v. State,* 3 Md. App. 485, 511 (1968).

The appellant contends that the evidence showed that

he acted in self-defense and that the evidence was not sufficient to prove murder in the first degree. The elements of the defense of self-defense are listed in *Tipton v. State*, 1 Md. App. 556, 560 (1967).

> "In order to justify an assault on the basis of self-defense, the accused must have had reasonable grounds to believe, and have in fact believed, himself to be in apparent imminent or immediate danger of death or serious bodily harm from his assailant or potential assailant. The trier of facts must determine whether the accused was justified in meeting force with force. If justification is found to have existed, the force used against the assailant must not have been unreasonable or excessive; i.e., the defender must not have used more force than the exigency reasonably demanded. *Guerriero v. State*, 213 Md. 545 at 549 (1957)."

The burden is on the defendant to prove by a preponderance of the evidence that he acted in self-defense. *Long v. State*, 3 Md. App. 638, 642 (1968); *Morris v. State*, 4 Md. App. 328, 331 (1968). The credibility of the witnesses, including the defendant, is a matter to be determined by the jury, as is the weight of the evidence. *Williams v. State*, 5 Md. App. 450, 458 (1968). From the evidence presented at trial the jury could reasonably find that one or more of the elements of the defense of self-defense had not been proven by the appellant.

There was also sufficient evidence from which the jury could have concluded that the killing was "wilful, deliberate, and premeditated." See Md. Code, Art. 27, § 407; *Brooks v. State, supra* at 511-12 (expanded definition of "wilful, deliberate, and premeditated"). According to the appellant's own testimony, he was holding a loaded shotgun when the victim was on the sidewalk in front of the house. Graves was unarmed and at his closest advance toward the appellant, assuming the testimony most favorable to appellant to be true, had one

foot on the bottom step of the seven steps leading up to the front door. Neither the appellant's wife nor the eye-witness Mrs. Day heard the murder threats which the appellant claims Graves made to him. In addition, if the testimony of the police is accepted, the shooting occurred at a distance of about sixty feet, a distance compatible with premeditation. In short, there was evidence from which the jury could find beyond a reasonable doubt that the design to kill preceded the killing by enough time for the appellant to deliberate and to form the purpose to kill Graves. See *Brooks v. State, supra.*

## II

### DYING DECLARATION

Officer Ronald Brown arrived at the scene within ten minutes of the shooting. He found Graves lying in blood soaked clothing in a pool of blood on the sidewalk with pellet holes from his chest to his knees. (The autopsy report, admitted in evidence, showed that pellets had penetrated both lungs, heart, liver, spleen, stomach, small intestine, left kidney, genitals, and arms and legs.) Graves was moaning faintly and appeared to be in severe pain. Officer Brown testified that he bent over close to Graves' face, on his hands and knees, and said, "Sol, you are shot in the belly with a shotgun. You are not going to make it. Tell me who shot you." Graves replied, "Jimmy shot me." Officer Brown said, "Jimmy who?", and Graves responded, "Jimmy Chandler." The victim died about seven hours later. At trial the statements made by Graves were testified to by Officer Brown, over the appellant's objection.

The statements were properly admitted, since they constituted dying declarations. For definitions of the term "dying declaration" and statements by the text writers as to the development and application of the rule, see *Connor v. State,* 225 Md. 543, 550 n.1 (1961). The appellant contends that the evidence does not show that Graves believed that his death was imminent. However, it was stated in *Connor v. State, supra* at 551:

"Nor was it necessary for the victim to state that she expected to die. It is sufficient if her condition is such (and she is aware of it) as to warrant an inference of impending death."

The facts of this case, such as the nature and extent of the wounds, the condition of the victim and the statement made to him by Officer Brown that he had been shot in the belly and was not going to make it, justify the inference that the victim was well aware of his impending death at the time he made the declarations.

## III

## SEARCH AND SEIZURE

After the shooting Officer Robert Jenkins entered the appellant's house and seized a shotgun, a box of unexpended shotgun shells, and a single expended shotgun shell. The appellant contends that the search was illegal. The State contends, correctly, that the appellant's wife consented to the search, thus validating it.

At the time of the search, which was not long after the shooting, the appellant was not in the house, having left immediately after that event. Upon arriving at the scene, Officer Jenkins went to the house and asked Mrs. Chandler whether the appellant was home. Officer Jenkins testified that "without answering me she said come into the house." He and Mrs. Chandler entered the house and Mrs. Chandler said that "the gun is upstairs." Mrs. Chandler testified that when the police arrived she "told them to come on in the house." She stated that "when the officer came in my house, I told him where the gun was at upstairs and everything. I took him up on the second floor." When Officer Jenkins arrived at the upstairs floor he saw the gun and shells, which he seized.

The testimony shows that the search was with the consent of the appellant's wife and that the search and seizures were not illegal. See *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 1429 (1969) (joint user has authority to consent to search) ; *Wade v. Warden,* 278 F. Supp. 904, 905-06 (D. Md. 1968) (wife who jointly occupies

apartment with husband has authority to consent to search) ; *Nestor v. State*, 243 Md. 438, 443 (1966) (one co-tenant may consent to search and evidence found can be used against other tenant whose permission to enter and search had not been elicited) ; *Bellam v. State*, 233 Md. 368 (1964) ; *State v. Kennedy*, 452 P. 2d 486 (1969) and authorities there cited. *Dorsey and Gladden v. State*, 2 Md. App. 40 (1967) is distinguishable, for in the instant case the appellant offered no objection to the search. It may be noted also that this Court in *Dorsey and Gladden* cited *Nestor v. State, supra,* and *Bellam v. State, supra,* without disapproval.

## IV

## DENIAL OF MISTRIAL

In his closing argument to the jury the State's attorney made two comments which the appellant contends were inflammatory. The appellant moved for a mistrial on the basis of the remarks, which was denied.

Officer Robert Jenkins had testified at trial that while he was in the appellant's house he saw on the dining room table a man's long sleeve white shirt and a handkerchief, both of which had "fresh blood" stains on them. The court sustained an objection to the admission into evidence of the items themselves, but no objection or motion to strike was made with reference to Officer Jenkins' testimony on this point. The appellant testified that he had previously cut his hand at work and gotten the blood on his handkerchief, but when questioned about each of the six days previous to the Sunday of the crime he denied that he had cut his hand on that day. He also stated that he did not know how the blood got on his shirt. It may be noted here that even from the cold pages of the transcript, the appellant's testimony on this point is vague, uncertain, and somewhat evasive.

In closing argument the prosecutor argued to the jury that the evidence showed that the deceased victim hit the appellant in the Tavern, which so enraged the appellant that he left the Tavern and lay in wait for the vic-

tim to emerge from the Tavern and come within shot-gun range. During this argument the prosecutor said:

> "I submit to you—and based on the fact that there was fresh blood on the handkerchief of the defendant and also on his shirt—there is no other logical explanation. If there is, I would like to hear it."

He also said:

> "I think we all agree on one solid point about the defendant's testimony. He lied about how the blood got on his handkerchief and he lied about how the blood got on his shirt. If he takes this witness stand . . . and would lie on that point, I submit to you that you have to . . . search your souls very deep to believe him on any other point."

This Court is of the opinion that both of these remarks are references to matter testified to by witnesses or disclosed by the evidence, or are references to inferences which may be logically deduced from the testimony given at trial. They are thus proper. See *Holbrook v. State,* 6 Md. App. 265, 269 (1969) and authorities there cited. We are unable to say that these remarks were so prejudicial to the appellant as to require the granting of the motion for mistrial. The grant or denial of such a motion rests within the discretion of the trial court and we are unable to say that the court abused its discretion here. *Matthews v. State,* 3 Md. App. 555, 559 (1968).

During rebuttal argument to the jury the prosecutor made a third remark which, it is asserted now, was inflammatory. The prosecutor stated:

> "Now, I want to first clear up one thing. When I say it's an interesting case, Mr. Cohn [appellant's trial counsel] would like you to think that I make light of it and that I am here as some kind of professor going through some

kind of experiment. I am a sworn officer of this State. I make that clear. It is not a pleasurable task for me to bring before a bar of justice a man who has killed another man. *But, if I don't do it, this man may go out and kill me or you or your children.* It's a test-tube case, yes, in the sense that the State—all we had to begin with was our ballistics expert and medical examination to determine how it was done . . ." (emphasis added).

No objection or motion to strike was made until argument on a motion for a new trial, some eight months after the conclusion of the trial. Thus the issue is not timely raised, since it was not "brought to the attention of the trial court when it [had] a reasonable opportunity to correct the situation at the conclusion of the argument." *Holbrook v. State, supra* at 271. It is therefore not properly before us for decision. Maryland Rule 1085.

However, were the issue properly before us, it would entitle the appellant to no relief. We recognized in *Holbrook v. State, supra* at 269, that "appeals to passion may so poison the minds of jurors that an accused may be deprived of a fair trial." But " 'unless it appears that the jury were actually misled or were likely to have been misled or influenced to the prejudice of the accused by the remarks of the State's attorney' reversal of a judgment of conviction will not be justified." In the instant case the remark complained of was one sentence in the ten transcript pages of rebuttal argument. The remark was not emphasized by repetition, and in the context of the entire argument does not appear to have been intended by the State's attorney to inflame the jury. In addition, after the rebuttal argument the trial court in its charge to the jury stated:

". . . you are to decide the case on the basis of the evidence and the exhibits that have been introduced in the course of the trial in this courtroom. That is the only evidence in this

case. And argument of counsel and any remarks from the judge as to what they think the evidence is, is not binding on you . . . ."

We are of the opinion that the single sentence complained of, when considered in the context of the whole argument and in relation to the remarks of the trial court to the jury, did not have such a tendency to prejudice the jury as to require us to reverse the judgment rendered in this case.

*Judgment affirmed.*