# WILHELM *v.* STATE OF MARYLAND

[No. 277, September Term, 1973.]

\* \* \*

# COOK *v.* STATE OF MARYLAND

[No. 283, September Term, 1973.]

*Decided September 26, 1974.*

The causes were argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*George E. Burns, Jr.,* and *Arnold M. Zerwitz, Assistant Public Defenders* for appellant Charles Edward Wilhelm.

*Arnold M. Zerwitz, Assistant Public Defender,* with whom was *George E. Burns, Jr., Assistant Public Defender,* on the brief, for appellant Kevin Exavier Cook.

*James I. Keane, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee State of Maryland in No. 277.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee State of Maryland in No. 283.

O'DONNELL, J., delivered the opinion of the Court. LEVINE and ELDRIDGE, JJ., dissent in No. 277 and LEVINE, J., filed a dissenting opinion in which ELDRIDGE, J., concurs at page 446 *infra.*

The appellant Charles Edward Wilhelm following a jury trial (MacDaniel, J., presiding) in the Circuit Court for Baltimore County, was convicted of assault with intent to murder [a police officer], with resisting arrest and with the unlawful use of a handgun in the commission of a felony. The Court of Special Appeals in an unreported opinion in *Charles Edward Wilhelm v. State* [No. 224, Sept. Term, 1973], affirmed the judgments.[1]

---

1. Judge Moore, for the majority of the three-judge panel, although suggesting that the remark of the prosecutor may have been improper, per se, found significant "the brevity and singularity of the statement in a trial otherwise unmarked by any taint of prejudice to the accused" and concluded on the authority of Clarke v. State, 238 Md. 11, 207 A. 2d 456 (1965); Wood v. State, 192 Md. 643, 65 A. 2d 316 (1949); and Holbrook v. State, 6 Md. App. 265, 250 A. 2d 904 (1969), that there was "no appreciable likelihood that the jury was misled or influenced to the prejudice of the appellant by the statement of the prosecutor." Judge Moylan, in a concurring opinion, concluded that there was "no impropriety in the first instance in the prosecutor's remarks; that under an adversary system such proceedings should not be sterilized with too fastidious a list of 'Thou shalt

At the commencement of his trial the Assistant State's Attorney prosecuting the case, after introducing himself to the jury, stated as follows:

"The State has charged Mr. Wilhelm on a ten-count indictment with assault with intent to murder one Phillip G. Huber, a Baltimore County *Police Officer*, on September 18, 1972, in Baltimore County. Listed, also, are several other charges. The State intends to prove robbery, assault with intent to rob, resisting arrest, and, under the new handgun bill passed last March, violation of the use of a handgun in the commission of a crime. The State feels *this is the Jury's chance* as individuals and collectively as citizens of Baltimore County — *we hear the hue and cry of police protection* — we feel *this is your occasion to do something about it.*" (Emphasis supplied.)

Counsel for the appellant objected and requested leave "to approach the bench," where the following colloquy took place:

"MR. MILES: My objection is made on the basis that the prosecutor is making a plea to the Jury in opening statement dealing with passion, alluding to a duty to convict my client to protect the police of our society. I feel it is only going to prejudice us and this is the basis of my objection. There is no more duty for conviction for assaulting a police officer than another person, and I would like to make the objection and I make a motion for a mistrial. I feel it has inflamed the Jury and calls for prejudice.

MR. LaVERGHETTA: I disagree. I think I have

nots.'" He advocated a commitment "to keep the balance true" in not inhibiting the rhetorical option of the State to appeal to "law and order" in the abstract unless he saw a palpable demonstration that defense attorneys as well were being effectively inhibited from appealing to the "Constitution" or the "Bill of Rights" in the abstract, and believing that the jury argument was forensic art form, advocated a "broad range to the performing artists."

a prerogative in opening statement to tell the Jury what their duty is and present the case.

THE COURT: All right, the motion for a mistrial is denied. You can tell them what their duty is in reference to listening to the entire case but don't go into the situation about police officer protection or anything else. Closing argument may be different but this is basically what their duty is and what you intend to prove. The motion for a mistrial is denied."

Counsel for the appellant requested no cautionary instruction to the jury and the trial court gave none. The opening statement was then concluded without further reference to the subject-matter or any additional objections.

We granted certiorari in *Wilhelm* limited to the question: whether the trial judge erred when he failed to declare a mistrial and failed to instruct the jury to disregard comments made by the prosecutor in the opening statement.

Kevin Exavier Cook, following a jury trial in the Criminal Court of Baltimore City (Sklar, J., presiding), was convicted of murder in the first degree (of one Charles Dean), of the attempted robbery with a dangerous and deadly weapon (of Dean) and of the robbery (of one James Conyer, a companion of Dean) under a third indictment. The judgments entered on his convictions were affirmed by the Court of Special Appeals in an unreported per curiam in *Kevin Exavier Cook v. State* [No. 210, Sept. Term, 1973].[2]

During his opening statement in *Cook* the Assistant State's Attorney advised the jury that what he was then telling them was "not evidence" but was "what I say the witnesses will tell you." During the course of the opening statement counsel for the State undertook to relate to the

---

2. The Court of Special Appeals, citing from Fryson v. State, 17 Md. App. 320, 301 A. 2d 211 (1973), Conway v. State, 7 Md. App. 400, 256 A. 2d 178 (1969) and Holbrook v. State, 6 Md. App. 265, 250 A. 2d 904 (1969), held — "In the light of the fact that the jury had on three occasions been informed that arguments of counsel were not evidence, we cannot conclude that the remarks created a likelihood that the accused was prejudiced to the extent that he was denied his right to a fair and impartial trial."

jury Mr. Dean's "last words." Counsel for the appellant objected, and at a "bench conference" advised the court that what the State's Attorney was about to relate was inadmissible — a hearsay statement. Following a denial of a motion for mistrial predicated upon a ruling by the court that he would permit the prosecutor to continue his opening statement, and that if what had been proffered in opening statement — by either counsel — was not proved, the jury would be instructed not to consider such evidence, Judge Sklar then instructed the jury as follows:

> "Ladies and gentlemen of the jury, as you know there has been an interruption of Mr. Libowitz' opening statement to you. What I want to tell you is anything that is said to you in *opening statements* by counsel, by lawyers, *is not evidence* in the case. And, likewise, anything that is said to you by counsel, whether or not for the State or for the defense *in closing argument, is not evidence* in the case. *Closing argument* is exactly what the word implies; *merely argument* to persuade you to think in the posture of whoever is talking to you based on the testimony in the case. . . . The only evidence that you hear comes from the witnesses in the case who testify or through exhibits that are filed in the case as exhibits." (Emphasis supplied.)

The opening statements of both counsel were then concluded without any additional objection.

At the outset of his closing argument before the jury the assistant prosecutor stated:

> "As veteran jurors, you will have to decide the issues in the case.
>
> I noticed you have paid very close attention to all the witnesses in the case and I appreciate your paying this much attention. Because, *what is said from the witness stand and the various exhibits introduced in the case is all that you will use to determine your verdict.* You as jurors are triers of the law and the facts." (Emphasis supplied.)

After summarizing the testimony of the various witnesses, midway in his closing argument the prosecutor told the jury:

> "*What I am telling you now is not evidence.* What the defense attorney tells you is not evidence. The only evidence for you to consider is what the witnesses stated on the witness stand plus the exhibits. . . ." (Emphasis supplied.)

And at the end of his closing argument the prosecutor stated the following:

> "Common sense, that is your greatest asset. Use it. Weigh all of the evidence and determine what happened.
>
> *Last year some three hundred thirty people were murdered in Baltimore City.* This is one of those murders from last year; Charles Dean. Maybe you didn't read about it in the newspapers last year. *I don't know how many people were robbed in the City with weapons.* I don't how [sic] how many, but, a lot. Some of the victims in those robberies were murdered. There are many people like Mr. Charles Dean who are defenseless in the face of four healthy young men. Defenseless, like Papa. You saw him on the stand. He couldn't defend himself. *These are the victims — the most common victims of the young toughs because they can't fight back. They are the people that are robbed.*
>
> Some of the people who commit these crimes get away with them because of the type of people they attack. I am sure there is nothing in the world right now that Mr. Kevin Cook would like more than to go scott free and get away with what he did on August 27, 1972. That is what he planned all along when he told his friend, don't use his name.
>
> Ladies and gentlemen, you as jurors cannot let Kevin Cook get away scott free. That is why the State is going to ask you to bring back a verdict of guilty." (Emphasis supplied.)

Following that statement counsel for the appellant, again at a bench conference, moved for a mistrial on the basis that the State's Attorney had "made prejudicial statements" particularly in reference to the number of murders committed in Baltimore and concerning the number of people who had been robbed. The trial court denied the motion.[3] Defense counsel then made reference to the fact that one Leonard Anderson (a co-defendant) had not testified — "Chose not to testify for whatever reason he chose not to" and requested the jury to draw an inference from that fact, and upon objection, the trial court stated that he did not think it was proper to comment about [the] refusal [of a co-defendant] to testify. Similarly, the trial court sustained the objection to the attempt by defense counsel — in closing argument — to read to the jury the names of the witnesses listed by the State in the answer to the motion for discovery,[4] and again to an effort on the part of defense counsel to relate to the jury what his client "tells me."

We granted certiorari in *Cook* limited to the question: whether the closing argument of the Assistant State's Attorney was beyond the scope of permissible comment.

In the trial of criminal prosecutions, although opening statements in a jury trial cannot be equated with closing arguments made to the jury, there is sufficient similarity of the issues involved in both to permit generally the application of common principles.[5] Since the common thread both in *Wilhelm* and in *Cook* is the alleged prejudicial statements by the prosecutor, we have consolidated both cases for discussion and ruling.

The primary purpose or office of an opening statement in

---

**3.** In argument in the Court of Special Appeals appellant broadened the scope of his attack upon the closing argument to include the reference that Dean was one of the many victims of "young toughs" who could not fight back.

**4.** The answer to the motion for discovery had not been offered in evidence. *Compare* Wood v. State, 192 Md. 643, 652, 65 A. 2d 316, 320 (1949), concerning names of witnesses appearing on the indictment.

**5.** *See* State v. Painter, 135 W. Va. 106, 112, 63 S.E.2d 86, 91 (1950); 23A C.J.S. Criminal Law § 1085 (1961).

a criminal prosecution is to apprise with reasonable succinctness the trier of facts of the questions involved and what the State or the defense expects to prove so as to prepare the trier of facts for the evidence to be adduced. While the prosecutor should be allowed a reasonable latitude in his opening statement he should be confined to statements based on facts that can be proved and his opening statement should not include reference to facts which are plainly inadmissible and which he cannot or will not be permitted to prove, or which he in good faith does not expect to prove. An opening statement by counsel is not evidence and generally has no binding force or effect. To secure a reversal based on an opening statement the accused is usually required to establish bad faith on the part of the prosecutor in the statement of what the prosecutor expects to prove or establish substantial prejudice resulting therefrom. *Clarke v. State*, 238 Md. 11, 19-20, 207 A. 2d 456, 460 (1965); *Ott v. State*, 11 Md. App. 259, 266, 273 A. 2d 630, 634, *cert. denied*, 262 Md. 748 (1971).

As to summation, it is, as a general rule, within the range of legitimate argument for counsel to state and discuss the evidence and all reasonable and legitimate inferences which may be drawn from the facts in evidence; and such comment or argument is afforded a wide range. Counsel is free to use the testimony most favorable to his side of the argument to the jury, and the evidence may be examined, collated, sifted and treated in his own way. Moreover, if counsel does not make any statement of fact not fairly deducible from the evidence his argument is not improper, although the inferences discussed are illogical and erroneous. Generally, counsel has the right to make any comment or argument that is warranted by the evidence proved or inferences therefrom; the prosecuting attorney is as free to comment legitimately and to speak fully, although harshly, on the accused's action and conduct if the evidence supports his comments, as is accused's counsel to comment on the nature of the evidence and the character of witnesses which the [prosecution] produces. *See* 23A C.J.S. *Criminal Law* § 1093 (1961). *See also Cicero v. State*, 200 Md. 614, 92 A. 2d 567

(1952); *Meyerson v. State*, 181 Md. 105, 28 A. 2d 833 (1942); 6 J. Wigmore, Evidence § 1806 (3d ed. 1940).

While arguments of counsel are required to be confined to the issues in the cases on trial, the evidence and fair and reasonable deductions therefrom, and to arguments of opposing counsel, generally speaking, liberal freedom of speech should be allowed. There are no hard-and-fast limitations within which the argument of earnest counsel must be confined — no well-defined bounds beyond which the eloquence of an advocate shall not soar. He may discuss the facts proved or admitted in the pleadings, assess the conduct of the parties, and attack the credibility of witnesses. He may indulge in oratorical conceit or flourish and in illustrations and metaphorical allusions. *See* 53 Am. Jur. *Trial* § 463 (1956).

As a limitation upon the general scope of permissible closing argument this Court in *Esterline v. State*, 105 Md. 629, 66 A. 269 (1907), cautioned that counsel should not be permitted by the court, over proper objection, to state and comment upon facts not in evidence or to state what he could have proven. Persistence in such course of conduct may furnish good grounds for a new trial. The conduct of the trial must of necessity rest largely in the control and discretion of the presiding judge and an appellate court should in no case interfere with that judgment unless there has been an *abuse of discretion* by the trial judge of a character likely to have injured the complaining party. 105 Md. at 637, 66 A. 2d at 272.

In *Toomer v. State*, 112 Md. 285, 76 A. 118 (1910), the appellant was convicted of having sent a threatening letter to extort money and advised the victim that his "buildings will all go up in smoke." The State's Attorney in his closing argument to the jury stated: "Gentlemen of the jury, fires have occurred in this County, buildings have been burned, and it was my duty to act in this matter." The trial court refused to require the prosecutor to retract the statement and on such refusal the appellant took exception. In holding that the State's Attorney had not made a statement of any fact outside the evidence as a reason or argument in favor of

conviction, our predecessors stated — concerning the closing argument:

> "It is unquestionably wrong for the State's Attorney in his argument to the jury to refer to any matter not testified to by the witnesses or disclosed by the evidence in the case, and it is his duty to confine his remarks to the facts in the case, but if every remark made by counsel in the heat of argument, not strictly applicable to the evidence offered, is to be held sufficient ground for reversing a judgment, few convictions would stand. The remarks to which objection was made were simply a statement by the State's officer of his reason for taking action in the case before the jury, and was not a statement of any fact outside of the evidence in the case as a reason for or argument in favor of the conviction of the accused. *In the absence of something to show that the jury was misled or influenced to the prejudice of the prisoner by such remarks* the lower Court would not have been justified in setting aside the verdict, nor would this Court be warranted in reversing the judgment appealed from. In the case of *Dunlop v. United States*, 165 U. S. 486, the Court said: 'If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation.' See also *Esterline v. State*, 105 Md. 629." 112 Md. at 292-93, 76 A. at 122. (Emphasis supplied.)

Whether it be in opening statement or in summation, "appeals to class prejudice or to passion are improper and may so poison the minds of jurors that an accused may be deprived of a fair trial," *Wood v. State*, 192 Md. 643, 652, 65 A. 2d 316, 320 (1949); "the State's Attorney has an obligation to refrain from making any remark — within the hearing of

the jury — which is likely or apt to instigate prejudice against the accused," *Contee v. State,* 223 Md. 575, 584, 165 A. 2d 889, 894-95 (1960), 229 Md. 486, 184 A. 2d 823 (1962), *cert. denied,* 374 U. S. 841 (1963); or, in derogation of the defendant's right to a fair trial, is "calculated to unfairly prejudice the jury against the defendant." *Newton v. State,* 147 Md. 71, 92, 127 A. 123, 132 (1924); *Meno v. State,* 117 Md. 435, 441, 83 A. 759, 761 (1912).

Of course, not every ill-considered remark made by counsel, even during the progress of the trial, is cause for challenge or mistrial. *Jones v. State,* 184 Md. 12, 15, 40 A. 2d 230, 231 (1944), citing *Dunlop v. United States,* 165 U. S. 486 (1897); *Callan v. State,* 156 Md. 459, 144 A. 350 (1929); *Dunn v. State,* 140 Md. 163, 117 A. 329 (1922); *Freud v. State,* 129 Md. 636, 99 A. 934 (1917). *See also Esterline v. State, supra,* and *Toomer v. State, supra,* both quoting *Dunlop v. United States.* What exceeds the limits of permissible comment depends on the facts in each case, even where the remarks may fall into the same general classification. *Shoemaker v. State,* 228 Md. 462, 468, 180 A. 2d 682, 685 (1962); *Holbrook v. State,* 6 Md. App. 265, 268-69, 250 A. 2d 904, 906 (1969).

In *Reidy v. State,* 8 Md. App. 169, 259 A. 2d 66 (1969), Chief Judge Murphy (then Chief Judge of the Court of Special Appeals), stated:

> "It is fundamental to a fair trial that the prosecutor should make no remarks calculated to unfairly prejudice the jury against the defendant. *Meno v. State,* 117 Md. 435; *Holbrook v. State,* 6 Md. App. 265. And it is unquestionably wrong for the prosecutor in his argument to the jury to refer to any matter not testified to by the witness or disclosed by the evidence in the case. *Toomer v. State,* 112 Md. 285. On the other hand, the fact that a remark made by the prosecutor in argument to the jury was improper does not necessarily compel that the conviction be set aside. *Conway v. State,* 7 Md. App. 400. The Maryland Rule is that unless it appears that the jury were actually misled or were

likely to have been misled or influenced to the prejudice of the accused by the remarks of the State's Attorney, reversal of the conviction on this ground would not be justified. *Wood v. State,* 192 Md. 643; *Holbrook v. State, supra.*" 8 Md. App. at 172, 259 A. 2d at 67-68.

*See also Shoemaker v. State, supra; Kellum v. State,* 223 Md. 80, 162 A. 2d 473 (1960).

Concerning what may be "prejudicial"[6] the Court in *Gaither v. United States,* 413 F. 2d 1061 (D.C. Cir. 1969) (cited by appellant *Cook*) stated:

"The applicable test for prejudice is whether we can say, 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' [Citing *Kotteakos v. United States,* 328 U.S. 750, 765 (1946).] The decisive factors are the closeness of the case, [citing *Cross v. United States,* 353 F.2d 454, 456 (D.C. Cir. 1965); *Jones v. United States,* 338 F.2d 553, 554 n.3 (D.C. Cir. 1964)] the centrality of the issue affected by the error, [citing *King v. United States,* 372 F.2d 383, 395 (D.C. Cir. 1967)] and the steps taken to mitigate the effects of the error. [Citing *Cross v. United States, supra.*]" 413 F. 2d at 1079.

In *Clarke v. State, supra,* the prosecutor in opening statement outlined to the jury what he expected to elicit by way of testimony from a witness; unknown to him the witness had married the defendant and at the trial she elected to refuse to testify against her husband. These remarks were held nonprejudicial because there was no evidence of "bad faith" on the part of the prosecutor. *See*

---

6. "Prejudice must be shown as a 'demonstrable reality' and not as a 'matter of speculation.'" Baldwin v. State, 5 Md. App. 22, 28, 245 A. 2d 98, 101 (1968), *cert. denied,* 252 Md. 729 (1969), citing Darcy v. Handy, 351 U. S. 454, 462 (1956). *See also* Bristow v. State, 242 Md. 283, 286, 219 A. 2d 33, 34-35 (1966).

*also* Annot., 28 A.L.R.2d 972 (1953); 23A C.J.S. *Criminal Law* § 1085 (1961). In *Contee v. State, supra,* remarks by the prosecutor there were held reasonably calculated to appeal to racial prejudice and were found prejudicial. *See also* Annot., 78 A.L.R. 1438 (1932); 45 A.L.R.2d 303, 306 (1956); 53 Am. Jur. *Trial* § 996 (1956). In *Shoemaker v. State, supra,* the prosecutor in closing argument advised the jury concerning the defendant's possible parole and eligibility for parole which were held likely to have influenced the jury to the prejudice to the accused. See also Annot., 132 A.L.R. 679 (1941); 53 Am.Jur. *Trial* § 466 (1956), and cases cited; 23A C.J.S. *Criminal Law* § 1107 (1961).[7]

In *Riggins v. State,* 125 Md. 165, 174, 93 A. 437, 440 (1915), restated in *Apple v. State,* 190 Md. 661, 666-67, 59 A. 2d 509, 511 (1948), and in *Cicero v. State, supra,* it was held improper for a prosecuting officer " 'to assert his personal belief or personal conviction as to the guilt of the accused,' " although his undisputed right to urge that the evidence convinced his mind of the accused's guilt was recognized. See also Annot., 75 A.L.R. 53 (1931).

In *Meno v. State, supra* (cited by appellant *Cook*), the conduct of the State's Attorney who interrupted a witness during her cross-examination and injected a statement — by way of answer to the question — which tended to connect the defendant with the crime but which as hearsay evidence was inadmissible had the State attempted to introduce it, was held prejudicial. In *Newton v. State, supra* (also cited by appellant *Cook*), the remarks by the prosecutor were held prejudicial when, in a dialogue with the court as to whether or not the defendant could testify that an audit had been made, he replied, "I have tried this very traverser and heard him swear that he did not."

In *Cook v. State,* 225 Md. 603, 171 A. 2d 460 (1961), *cert. denied,* 368 U. S. 970 (1962), repeated questions to the

---

7. *See also* Fryson v. State, 17 Md. App. 320, 301 A. 2d 211 (1973), where remarks in closing argument that if the defendant were found guilty he would "be put on probation" were "highly prejudicial" and did not afford the defendant "a fair and impartial trial." The trial court sustained objection to the remarks but took no other remedial action.

defendant about a prior conviction in 1938, where the defendant denied the conviction and the State thereafter in good faith failed to proffer to prove the conviction, was held highly improper and prejudicial.

In *Esterline v. State, supra,* where a number of the defendant's witnesses testified in support of self-defense that immediately after the fight the appellant "had marks of fingers on his throat" and the State's Attorney in closing argument stated that if he had known such evidence would be offered "he would have produced 100 witnesses to prove there were no fingerprints on the throat of the defendant at that time," such argument was held improper. In *Wilson v. State,* 261 Md. 551, 276 A. 2d 214 (1971) (cited by both appellants, *Cook* and *Wilhelm*), the prosecutor was summoned as a witness for the defense and testified that his own life had been threatened during the course of the investigation of the case; that the defendant was "Henderson's number one lieutenant" and volunteered the opinion that Henderson's murder had been an "assassination." Such volunteered substantive evidence by the prosecutor was held to be no different from comments made by the prosecutor and held to have been prejudicial.

In *Holbrook v. State,* 6 Md. App. 265, 250 A. 2d 904 (1969), the prosecutor in closing argument stated that the defendant "had been on the witness stand many times," stated that the victim of the assault had told him "the same version on numerous occasions" (without any evidence of any such fact), that the defendant was "mentally defective and the fact of his being mentally defective could be proven by the fact that he had been convicted of assault and battery on several prior occasions." Three references were made in closing argument to the defendant's prior convictions for assault and battery — going to other than the issue of his "credibility" and such closing argument was held prejudicial. Similarly, in *Conway v. State,* 7 Md. App. 400, 256 A. 2d 178 (1969), in a prosecution for rape, where the defendant had been previously convicted of assault with intent to rape and where the prosecutor in closing argument made reference to such prior conviction and argued that the

jury [would] "have to think about other young girls in similar circumstances," such remarks were held to have "likely misled or influenced the jury to the appellant's prejudice."

In *Reidy v. State, supra,* where "self-defense was the heart and soul of appellant's defense" and the prosecutor in closing argument stated: "There is really no self-defense here. It is a fiction manufactured by defense counsel." Such reference to a "manufactured defense by counsel," suggesting suborned perjury, was held to have denied the appellant a fair trial.

In *Killie v. State,* 14 Md. App. 465, 287 A. 2d 310, *cert. denied,* 265 Md. 740 (1972) — a prosecution for possession of marijuana, its distribution and the maintenance of a "common nuisance" — the State's Attorney in final rebuttal argument asserted that the appellant, a public elementary school principal, was using the lure of marijuana to entice young boys to his home for homosexual purposes. [There was evidence of the appellant having kissed an adult male.] Upon objection by defendant's counsel to the reference to enticing young boys, the State's Attorney changed it to argue that he was "using this [marijuana] to get men there." It was held that the introduction of the notion of homosexuality, especially on the part of an elementary school principal vis-a-vis "boys" or "young boys" added a totally foreign consideration to the case — an irrelevancy replete with strong potential for unfair prejudice.

In *Glickman v. State,* 190 Md. 516, 60 A. 2d 216 (1948), a reference made by the prosecutor in closing argument that the defendant was a "Philadelphia foreigner" was held nonprejudicial. Similarly, in *Wood v. State,* 192 Md. 643, 65 A. 2d 316 (1949), the comments by the State's Attorney in closing argument that "It is the policy of the courts, it is the policy of the State's Attorney, to stop the carrying of guns. I will send every one to jail that carries a gun," and argument that "He [the defendant] was at one of these joints where they carry guns," that "as happens so often at these joints . . . somebody got hurt because somebody came there with a gun. That is what I am trying to break up . . . as God gives me strength, I will break it up," were not found to be a

sufficient basis for finding that the jury "were actually misled or were likely to have been misled or influenced to the prejudice of the accused." And in *Toomer v. State, supra,* the remarks by the prosecutor concerning fires which had occurred in the county were held to have been nonprejudicial and "simply a statement by the State's officer of his reason for taking action in the case before the jury, and not a statement of fact outside the evidence in the case as a reason for, or argument in favor of the conviction of the accused." *See also Cohen v. State,* 173 Md. 216, 195 A. 532, *cert. denied,* 303 U. S. 660 (1937), where a remark by the State's Attorney in closing argument that a bench warrant had been issued for the defendant by the court was held nonprejudicial. In *Britton v. State,* 10 Md. App. 70, 267 A. 2d 747, *cert. denied,* 259 Md. 730 (1970), a question by the Assistant State's Attorney directed to a defense witness: "Do you recall testifying on a prior proceeding? " was equally held nonprejudicial.

In *Ott v. State,* 11 Md. App. 259, 273 A. 2d 630, *cert. denied,* 262 Md. 748 (1971), the prosecutor in closing argument stated: "I think that he [Ott] is the type of individual that fits the pattern of the State's theory of the case and that he is typically the type person who might do exactly what was done under the theory of the State's case," was held to be a reference to the appellant's demeanor on the witness stand and his actions at the time of the alleged crime. That argument as well as the prosecutor's reference that "We are lucky we are not here today with a murder charge," were all held to be fair comment in closing argument. In *Peterson v. State,* 15 Md. App. 478, 292 A. 2d 714, *cert. denied,* 266 Md. 735, 738, 741 (1972), the testimony by a detective that a witness who had been seen to approach the automobile in which the appellant was the only occupant was "known to me to be a heroin addict," was held nonprejudicial and "even if improperly considered on the merits, its impact . . . was minimally cumulative on the ultimate issue of guilt or innocence."

In *Witcher v. State,* 17 Md. App. 426, 302 A. 2d 701, *cert. denied,* 269 Md. 768 (1973), a reference was made by the

State's Attorney in closing argument concerning a witness who had admitted lying to the police but who testified that he was telling the truth, as to why the witness had been taken before the Grand Jury. Such statement was held to be "fair comment made during the course of oral argument and not misleading to the jury."

In *Contee v. State, supra,* Judge Horney, who delivered the opinion of the Court, stated:

" . . . [W]hile the granting or refusal of a mistrial is a matter lying within the sound discretion of the trial court, the court, nevertheless, in addition to sustaining an objection to an improper remark or misconduct, is also entrusted with further responsibility to caution or reprimand the State's Attorney as the exigencies of the situation may require and to forthwith instruct the jury to disregard the unwarranted remarks and conduct of the prosecuting attorney." 223 Md. at 584, 165 A. 2d at 895.

See also *Westcoat v. State,* 231 Md. 364, 190 A. 2d 544 (1963); *Newton v. State, supra; Holbrook v. State, supra; Conway v. State, supra; Reidy v. State, supra;* and *Killie v. State, supra.*

Chief Judge Murphy (then Chief Judge of the Court of Special Appeals), for that court, in *Conway,* stated:

"We think it too plain to require discussion that the prosecutor's improper remarks were highly prejudicial, particularly so in view of the fact that appellant, by motion prior to trial, had sought to suppress the prior conviction on the ground, among others that it would mislead the jury into believing that he had committed the present offense because he had been previously convicted of committing a similar offense. In this light, when the prosecutor told the jury that it should consider the fact that 'This isn't the first time for this young man; ' and that 'He was convicted of assault with intent to

rape before,' we think the occasion was one screaming out for the forceful interdiction of the trial judge, *viz.*, an instruction to the jury that the argument was improper, why it was improper, and a severe reprimand to the prosecutor for making it.

We, of course, have no way of calculating the consideration given by the jury to appellant's prior conviction for assault with intent to rape. We cannot know, therefore, whether the jury considered such evidence as substantive proof of appellant's guilt or merely as evidence impeaching his credibility as a witness. That the jury *was free to consider the prior conviction as substantive proof of guilt is, however, entirely clear* and we conclude that the *jury was likely misled or influenced to appellant's prejudice* and that under the circumstances the prosecutor's improper argument deprived appellant of a fair trial. See *Wethington v. State, supra.* [3 Md. App. 237, 238 A. 2d 581 (1968).]

In so concluding we are mindful of the rule that an improper reference to a prior conviction might not constitute reversible error *where it was of such minor importance that it was unlikely that the accused could have been prejudiced thereby,* or *where the State's evidence was so strong that it is improbable that a contrary result would have been reached by the jury.* See *Lamar v. State,* 5 Md. App. 594." 7 Md. App. at 414-15, 256 A. 2d at 186. (Emphasis supplied.)

In *Reidy* Chief Judge Murphy, again for the Court of Special Appeals, pointed out not only the lack of any "forceful interdiction" on the part of the trial court, but the approbation given by the trial court to the prosecutor's prejudicial remarks. He stated:

"Where, as in the present case, the prosecutor's remarks had such a clear potential of prejudicing appellant's right to a fair trial, and objection was immediately made thereto on the ground that they

were 'absolutely improper and out of order,' we think the situation thus created was one screaming out for the forceful interdiction of the trial judge and, at the least, a directive to the prosecutor to apologize to defense counsel for the remark — this being all that defense counsel had requested be done. But even without the apology sought by the appellant, it is not unlikely that the jury would have considered the prosecutor's remarks, standing alone, as the practical equivalent of an argument that the claim of self-defense was so far-fetched that is was utterly devoid of any merit. *Had not the trial judge, therefore, in referring to the prosecutor's remarks, instructed the jury that 'it is no improper remark,' a different case may well have been presented than that now before us. But the trial judge's statement, viewed in the light of his refusal to order the prosecutor to apologize to defense counsel, necessarily reinforced and gave significant substance to the prosecutor's argument,* with the result likely created in the mind of the jury that the trial judge, like the prosecutor, thought appellant's claim of self-defense was a 'fiction manufactured by defense counsel' — a conclusion which was considerably strengthened when the prosecutor, without rebuke or correction from the court, interrupted defense counsel's closing summation to the jury to state that his remarks were not only not improper, but the court had ruled that they were indeed proper." 8 Md. App. at 178, 259 A. 2d at 70-71. (Emphasis supplied.)

When in the first instance the remarks of the State's Attorney do appear to have been prejudicial, a significant factor in determining whether the jury were actually misled or were likely to have been misled or influenced to the prejudice of the accused is whether or not the trial court took any appropriate action, as the exigencies of the situation may have appeared to require, to overcome the likelihood of prejudice, such as informing the jury that the

remark was improper, striking the remark and admonishing the jury to disregard it. When such action has been taken by the trial court and found to have been sufficient by the reviewing court, the judgments have not been reversed. *See Cohen v. State, supra,* where the trial court told the jury to disregard the reference concerning the warrant and determine their verdict from the evidence heard under oath from the witnesses; *Clarke v. State, supra,* where the court charged the jury to determine the defendant's guilt "from the evidence admitted and not from the fact of his indictment" ; *Cook v. State, supra,* where the trial court instructed the jury that there was no evidence the defendant had been previously convicted of crime; *Wilson v. State, supra,* where the court instructed the jury to disregard that portion of the State's Attorney's testimony which had been volunteered. In *Newton v. State, supra,* the remarks upon motion were stricken; no other action was requested and the court held that the failure to warn the jury was not reversible error. In *Esterline v. State, supra,* the court ruled that the prosecutor's remarks were not proper and he "withdrew" the objectionable statement. The Court in finding no reversible error gave due weight to the evaluation by the trial judge "of the probable effect upon the jury of the remarks of counsel, as well as of all the events and circumstances of trial." In *Wood v. State, supra,* the State's Attorney stated that he was willing to apologize if his remarks were improper and told the jury that the only issue "was whether the defendant was guilty of carrying a concealed weapon."

Contrariwise, where no such action was taken by the trial court the prejudice found to have existed were grounds for reversal. *See Shoemaker v. State, supra,* and *Meno v. State, supra,* in both of which the trial court respectively overruled the defendant's objection and denied a motion to strike out the remarks which were found to have been prejudicial; and *Conway v. State, supra,* where the trial court merely told the prosecutor "let's not dwell on the previous conviction."

Similarly, reversals have been mandated in *Reidy v. State, supra, Holbrook v. State, supra* and *Killie v. State, supra,*

where the trial courts not only failed to take any curative action, but, in fact, gave approbation to the highly prejudicial remarks of the prosecutor.

In the recent case of *Donnelly v. DeChristoforo*, 94 S. Ct. 1868 (1974), the United States Supreme Court held that the curative instruction given by the trial court prevented the remarks by the District Attorney in closing argument from being prejudicial and from denying the respondent "due process."

In response to argument by counsel for DeChristoforo the District Attorney told the jury: "I don't know what they want you to do by way of a verdict. They said that they hope that you find him not guilty. I quite frankly think that they hope that you find him guilty of something a little less than first-degree murder." The trial court instructed the jury that closing arguments were not evidence for their consideration and further instructed the jury that there was no evidence whatsoever in support of the District Attorney's statement and the jury was instructed to disregard it. The respondent was found guilty of murder in the first degree.

Mr. Justice Rehnquist, who delivered the majority opinion for the Court, stated:

> "This is not a case in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights, such as the right to counsel, Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), or in which the prosecutor's remarks so prejudiced a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). (Footnote omitted.) When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them. But here the claim is only that a prosecutor's remark about respondent's expectations at trial by itself so infected the trial

with unfairness as to make the resulting conviction a denial of due process. We do not believe that examination of the entire proceedings in this case supports that contention." 94 S. Ct. at 1871.

He continued:

"In addition, the trial court took special pains to correct any impression that the jury could consider the prosecutor's statements as evidence in the case. The prosecutor, as is customary, had previously told the jury that his argument was not evidence, and the trial judge specifically reemphasized that point. Then the judge directed the jury's attention to the remark particularly challenged here, declared it to be unsupported, and admonished the jury to ignore it. Although some occurrences at trial may be too clearly prejudicial for such a curative instruction to mitigate their effect, the comment in this case is hardly of such character." 94 S. Ct. at 1872. (Footnotes omitted.)

After observing that "the prosecutor's remark here, admittedly an ambiguous one, was but one moment in an extended trial and was followed by specific disapproving instructions," he continued:

"Such arguments, like all closing arguments of counsel, are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." 94 S. Ct. at 1873.

In distinguishing the facts from those in *Brady v.*

*Maryland,* 373 U. S. 83 (1963) and *Miller v. Pate,* 386 U. S. 1 (1967), it was further stated:

"But here there was neither the introduction of specific misleading evidence important to the prosecution's case-in-chief nor the nondisclosure of specific evidence valuable to the accused's defense. There were instead a few brief sentences in the prosecutor's long and expectably hortatory closing argument which might or might not suggest to a jury that the respondent had unsuccessfully sought to bargain for a lesser charge. We find nothing in *Brady* to suggest that due process is so easily denied." 94 S. Ct. at 1873.

Another important and significant factor where prejudicial remarks might have been made is whether or not the judgment of conviction was "substantially swayed by the error," or where the evidence of the defendant's guilt was "overwhelming."

In *Berger v. United States,* 295 U. S. 78 (1935) (cited by both appellants *Cook* and *Wilhelm*), the Court characterized the conduct of the United States Attorney as follows:

"That the United States prosecuting attorney overstepped the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense is clearly shown by the record. He was guilty of misstating the facts in his cross-examination of witnesses; of putting into the mouths of such witnesses things which they had not said; of suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof was offered; of pretending to understand that a witness had said something which he had not said and persistently cross-examining the witness upon that basis; of assuming prejudicial facts not in evidence; of bullying and arguing with witnesses; and in

general, of conducting himself in a thoroughly indecorous and improper manner." 295 U. S. at 84.

The Court, after referring to the situation as "one which called for stern rebuke and repressive measures and, perhaps, if these were not successful, for the granting of a mistrial," held that: "It is impossible to say that the evil influence upon the jury of these acts of misconduct was removed by such mild judicial action as was taken." 295 U. S. at 85.

Mr. Justice Sutherland, who delivered the opinion for the Court, did, however, state:

"In these circumstances prejudice to the cause of the accused is so highly probable that we are not justified in assuming its non-existence. If the case against Berger had been strong, or, as some courts have said, the evidence of his guilt 'overwhelming,' a different conclusion might be reached. Compare *Fitter v. United States*, 258 Fed. 567, 573; *Johnson v. United States*, 215 Fed. 679, 685; *People v. Malkin*, 250 N. Y. 185, 201-202; 164 N. E. 900; *Iowa v. Roscum*, 119 Iowa 330, 333; 93 N. W. 295. Moreover, we have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential." 295 U. S. at 89.

*See also United States v. Socony Vacuum Oil Co.*, 310 U. S. 150 (1940); *United States v. Leftwich*, 461 F. 2d 586, 590 (3d Cir.), *cert. denied*, 409 U. S. 915 (1972); *Gaither v. United States, supra; Peterson v. State, supra; Conway v. State, supra; Chandler v. State*, 7 Md. App. 646, 256 A. 2d 695 (1969), *cert. denied*, 256 Md. 743 (1970). *See* as well *State v. Johnson*, 60 Wis. 2d 334, 345-46, 210 N.W.2d 735, 741 (1973).[8]

---

8. In United States v. Leftwich, 461 F. 2d 586, 590 (3d Cir.), *cert. denied*, 409 U. S. 915 (1972), the Court observed: "Trials are rarely, if ever, perfect and improprieties of argument by counsel to the jury do not call for a new trial unless they are so gross as probably to prejudice the defendant. . . ." 461 F. 2d at 590.

In considering whether, in the first instance, any of the remarks attributed to the prosecutor had the effect of unfairly creating prejudice against the defendant, recognition must be given to the fact that the trial judge, who presides in the arena where the forensic adversaries are engaged, is in the best position to evaluate and assess — in the context in which the remarks are made and their relationship to other factors in the trial — whether they were in fact prejudicial. *Cook v. State, supra; Lusby v. State,* 217 Md. 191, 195, 141 A. 2d 893, 895 (1958).

In the environment of the trial the trial court is peculiarly in a superior position to judge the effect of any of the alleged improper remarks. *Johnson v. State,* 18 Md. App. 571, 574-75, 308 A. 2d 426, 428-29, *cert. denied,* 270 Md. 740 (1973). *See Nelson v. State,* 5 Md. App. 109, 117-18, 245 A. 2d 606, 611 (1968), *cert. denied,* 252 Md. 732 (1969); *Avey v. State,* 1 Md. App. 178, 188, 228 A. 2d 614, 619 (1967), *rev'd on other grounds,* 249 Md. 385, 240 A. 2d 107 (1968).

*See also Orebo v. United States,* 293 F. 2d 747, 749 (9th Cir. 1961), *cert. denied,* 368 U. S. 958 (1962); *United States v. Holt,* 108 F. 2d 365 (7th Cir. 1939); *Tuckerman v. United States,* 291 F. 958, 959 (6th Cir. 1923).

The trial judges are certainly mindful of the responsibility entrusted unto them under the holdings in *Contee v. State, supra* — if the remarks appear to be prejudicial to the defendant — to caution or reprimand the prosecutor as the exigencies of the situation may require and to instruct the jury to disregard such unwarranted remarks.

A request for a mistrial in a criminal case is addressed to the sound discretion of the trial court and the exercise of its discretion, in a case involving a question of prejudice which might infringe upon the right of the defendant to a fair trial, is reviewable on appeal to determine whether or not there has been an abuse of that discretion by the trial court in denying the mistrial. *Basiliko v. State,* 212 Md. 248, 260-61, 129 A. 2d 375, 381 (1957). The decision by the trial court in the exercise of its discretion denying a mistrial will not be reversed on appeal unless it is clear that there has been prejudice to the defendant. See *Lusby v. State, supra.*

Judge Horney, who delivered the opinion of the Court, in *Lusby*, quoted with approval from 53 Am. Jur. *Trial* § 971 (1956) as follows:

" 'It is impossible to define all the circumstances that may constitute an urgent necessity justifying [the declaration of a mistrial and] the discharge of a jury in a criminal case. Except as found in the decided cases, the matter is left to the sound discretion of the presiding judge, acting under his oath of office, having due regard to the rights of the accused and the state. The power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.' " 217 Md. at 196-97, 141 A. 2d at 896.

*See also Contee v. State, supra; Smith v. State*, 4 Md. App. 146, 241 A. 2d 728 (1968); *Matthews v. State*, 3 Md. App. 555, 240 A. 2d 325 (1968); *Watts v. State*, 3 Md. App. 454, 240 A. 2d 317 (1968), *appeal dismissed*, 394 U. S. 214 (1969); *Barton v. State*, 2 Md. App. 52, 233 A. 2d 330, *cert. denied*, 248 Md. 733 (1967).

The trial court, in the exercise of its discretion, should declare a mistrial only where there is "manifest necessity for the act," *Cornish v. State*, 272 Md. 312, 322 A. 2d 880; it should never be granted for light and transitory reasons which do not result in any real prejudice to the accused. *Johnson v. State, supra.*

This, of course, does not mean that we are absolutely bound by the trial judge's determination on a motion for mistrial, or by his determination that the remarks were nonprejudicial.

What the Illinois appellate court succinctly stated in the recent case of *People v. Mackins*, 17 Ill.App.3d 24, 308 N.E.2d 92 (1974), seems to be in accord with our cases, when they stated:

"The tendency of reviewing courts in Illinois, based upon the correct proposition that the trial court has a superior opportunity to determine the

propriety of final argument, is that these issues are generally left to the trial court absent a clear abuse of discretion. (*People v. Smothers*, 55 Ill.2d 172, 176, 302 N.E.2d 324.) It has been held ' * * * impractical to lay definite guidelines for what may and what may not be said in arguments to a jury.' (*People v. Gilmore*, 118 Ill.App.2d 100, 110, 254 N.E.2d 590, quoting from *People v. Wilson*, 116 Ill.App.2d 205, 253 N.E.2d 472.) Furthermore, the mere occurrence of improper remarks does not by itself constitute reversible error. There must be an additional element for this conclusion to be reached. If we cannot say that the assailed argument constituted 'a material factor in the conviction' (People v. Clark, 52 Ill.2d 374, 390, 288 N.E.2d 363); must have resulted in 'substantial prejudice to the accused' (People v. Nilsson, 44 Ill.2d 244, 248, 255 N.E.2d 432) or that 'the verdict would have been different had the improper closing argument not been made * * *' (People v. Trice, 127 Ill.App.2d 310, 319, 262 N.E.2d 276), then we must necessarily conclude that no prejudicial error resulted from the argument." 17 Ill.App.3d at 46-47, 308 N.E.2d at 110.

With this background we turn now to a consideration of the instant cases — in neither of which the trial judges gave any instructions to the respective juries concerning the alleged improper remarks by the respective prosecutors.

## The *Wilhelm* Case

When the assistant prosecutor in his opening remarks made reference to "the hue and cry of police protection" and advised the jury that this was their "chance — this is your occasion to do something about it," it appears that his remarks were not "carefully constructed *in toto* before the event" and his improvisation "result[ed] in syntax left imperfect and meaning less than crystal clear." *Donnelly v. DeChristoforo, supra.* Indeed, in the syntax used it might

suggest at most a "slip of the tongue, not unknown in extemporaneous speaking." *Orebo v. United States, supra,* citing *Pacman v. United States,* 144 F. 2d 562 (9th Cir. 1944). The reference to "police protection" seems by itself ambiguous, although the prosecutor had theretofore advised the jury that the crimes charged — robbery, assault with intent to rob, resisting arrest and violation of the handgun law — all involved a police officer as the victim of the designated crimes. At best, the totality of these opening remarks could be concluded to be an invocation of "law and order" or an exhortation unto the jury "to do their duty," or an appeal to have law enforcement. *See* Annot., 78 A.L.R. 1465 (1932).

In *Matthews v. State,* 3 Md. App. 555, 240 A. 2d 325, *cert. denied,* 251 Md. 750 (1968), the appellant contended that the trial court committed prejudicial error in failing to grant a motion for mistrial based upon the State's comment to the jury in closing argument that the jury "acts as a protective force to the citizens of Montgomery County." The Court of Special Appeals found that there was no abuse of the discretion vested in the trial court in failing to grant the motion based upon such an argument.

In *State v. Spears,* 505 S.W.2d 92 (Mo. 1974), the prosecutor, in closing argument after first observing that the defendant was in jail, told the jury: "Ladies and Gentlemen, all this talk about crime and lack of law enforcement ends right here with you. The defendant is before you. The evidence has been presented to you. You are now the sole judge of the defendant's guilt or innocence. If you find the defendant guilty I am going to ask you in all justice to send him back to that jail over there where the other burglars are waiting to be tried." After an objection by the defense was overruled the prosecutor told the jury that "We are asking for justice now. . . . But right now the State of Missouri asks and insists on justice under the law as you see it." Such remarks were not held to be prejudicial.

In *Commonwealth v. Feiling,* 214 Pa. Super. 207, 252 A. 2d 200, *allocatur denied,* 252 A. 2d 200 (1969), the appellee's conviction for armed robbery was affirmed. During his

summation to the jury the prosecutor told the jury that "they might place themselves in the position of having been robbed." The court, in holding that there was no abuse of discretion on the part of the trial court, which found the remarks "not sufficiently harmful, if indeed they be harmful in the law at all," stated:

> "Although appeals to prejudice and passion are not to be approved, we have held that a District Attorney in his arguments, within proper limits, may argue for law and order and remind the jury of the danger to the community posed by persons prone to resort to violence. *Commonwealth v. McHugh,* 187 Pa.Super. 568, 145 A.2d 896 (1958). We hold that those limits were not exceeded in the present case although the District Attorney's remarks were directed to the individual jurors as members of the community. Generally it is for the trial judge to determine whether such remarks are so prejudicial as to require a new trial on that ground alone, or whether their effect was sufficiently attenuated by the rest of the argument as to have no effect on the verdict. *Kuchinic v. McCrory,* 422 Pa. 620, 222 A.2d 897 (1966); *Smith v. Evans,* 421 Pa. 247, 219 A.2d 310 (1966)." 214 Pa. Super. at 212, 252 A. 2d at 203.

In *Guajardo v. State,* 363 S.W.2d 259 (Tex. Crim. App. 1963), where the appellant had been convicted of the murder of a policeman, the prosecutor, in his opening remarks to the jury, stated: "So bear that in mind, that you are the conscience of your community. You are going to speak out for this community and let the rest of the state know exactly what this community thinks about people that kill law officers." Such remarks were held to be "clearly a plea for law enforcement and permissible under the holdings of *Scarborough v. State,*" 344 S.W.2d 886 (Tex. Crim. App. 1961), and *Lockett v. State,* 155 Tex. Crim. 55, 231 S.W.2d 416 (1950). *See also Parks v. State,* 400 S.W.2d 769 (Tex. Crim. App. 1966). *Compare* with *Pennington v. State,* 171

Tex. Crim. 130, 345 S.W.2d 527 (1961); *Jackson v. Commonwealth*, 301 Ky. 562, 192 S.W.2d 480 (1946); *Emerson v. State*, 90 Ga. App. 323, 82 S.E.2d 882 (1954); *People v. Farrar*, 36 Mich. App. 294, 193 N.W.2d 363 (1972) (each of which was cited by appellant *Wilhelm*). In *Pennington* the prosecutor in closing argument told the jury: "The people of Nueces County expect you to put this man away" ; in *Jackson* the prosecutor told the jury: "Ladies and gentlemen of the jury, you are being watched by the men and women of this county so that they can tell by your verdict your character and the kind of men and women you are in the county" ; in *Emerson* the prosecutor told the jury: "Let's get stern and severe with these damned 'coloreds' " ; and in *Farrar*, involving a conviction for felonious assault upon a police officer, the prosecutor told the jury that, "Every day they're [policemen] called pigs and people assault them with their fists and words. You know they don't bring these things in. Those people are never charged with offenses. They don't bring these things into court unless they really happen. The point is the reason why they're here is this actually happened as the officers testified that it happened." He added, "that if the defendant in the opinion of the police and in *my opinion* were innocent of this charge, we would not be here right now." These remarks — stating the personal opinion of the prosecutor and of the police — were held to have "subtly converted the presumption of innocence into a presumption of guilt." *See* Annot., 85 A.L.R.2d 1132 (1962), concerning the prejudicial effect of a prosecuting attorney's argument to a jury that the people of a city, county or community want or expect a conviction.

*Kellum v. State, supra,* as in *Wilhelm,* involved an assault and battery upon a police officer in which the testimony disclosed that the defendant had used force in resisting a lawful arrest. In closing argument the State's Attorney read to the jury a magazine article giving a description of a "police officer" which can succinctly be described as a eulogy of a hypothetical or perhaps somewhat synthesized and idealized police officer.

Chief Judge Brune for this Court, after citing from *Toomer v. State, supra,* the holdings in *Glickman v. State, supra* and *Wood v. State, supra,* stated:

"In the instant case it is clear that the description objected to was not evidence outside the record which tends to connect the defendant with the crime, nor evidence that the trial was dominated by prejudice and passion. While the statement could have been designed to arouse the sympathy of the jury for policemen in general, it is difficult to see how the jury could have been misled or prejudiced against Kellum because of the reading of it. . . . The jury, representing as it does the collective experience of the community, may be fairly presumed to have known, in general, the varied tasks and lot of a policeman and to have known the essential needs filled by police officers. Though the reading of such an effusion was, we think, certainly not to be commended and should, indeed, not have been permitted in the trial of the case, we are unable to find in it any such persuasive power or significance as might be expected to sway a jury of reasonable intelligence and ordinary human experience. We are, therefore, unable to conclude that any actual prejudice resulted from its reading." 223 Md. at 88, 162 A. 2d at 478.

In *Westcoat v. State, supra,* the appellant had been convicted of the murder of a policeman and it was contended, *inter alia,* on appeal that the trial court had erroneously permitted the State's Attorney to argue improperly to the jury in making a reference to the "slaying of the policeman" and a characterization of the slain policeman as "this poor officer."

Judge Marbury, who delivered the opinion for the Court, stated:

"The applicable principle here involved is set out in *Kellum v. State,* 223 Md. 80, 87, 162 A. 2d 473:

'In the absence of something to show that the

jury was misled or influenced to the prejudice of the prisoner by such remarks the lower Court would not have been justified in setting aside the verdict, nor would this Court be warranted in reversing the judgment appealed from.',

citing *Toomer v. State*, 112 Md. 285, 76 Atl. 118, Chief Judge Brune, for the Court, went on to point out that although the statement objected to, a reading of an advertisement which listed the good qualities needed for police officers (the defendant having been convicted of assaulting a policeman) quite possibly should not have been allowed, this Court could not see how it could 'sway a jury of reasonable intelligence and ordinary human experience.' 223 Md. at page 88. We find that the same principle applies here. They did not exceed the bounds of permissible argument." 231 Md. at 369-70, 190 A. 2d at 546-47.

In our review, made from the cold print of the record, we must give due weight to the conclusion of the trial judge who witnessed the presentation and heard the actual remarks — in the context in which they were made, in the trial arena — and who found no prejudice. The alleged improper remark — at best an introduction to a possible invocation of "law and order," or the commencement of an exhortation unto the jury "to do their duty," or the inception of an appeal for law enforcement — was but one sentence in the extensive proceedings, singularly made and unrepeated. *See Chandler v. State, supra.* When counsel promptly objected, the trial judge admonished the prosecutor "not to go into the situation about police officer protection or anything else." Thereafter no alleged improper statement was uttered. The interruption of the remarks by objection, the bench conference and the abandonment of any reference to the idea apprised the jury that the trial court had "vetoed" the idea propounded. Any proclivity on the part of the prosecutor to continue such an harangue was terminated. The trial judge

was in the most advantageous position to evaluate any potential prejudice from the remark; by his ruling he found none. If in the trial environment he had sensed the likelihood of any prejudice he would have carried out the duty with which he was entrusted — under *Contee, supra* — and of which he was certainly aware — to instruct the jury to disregard such remark; the exigencies of the situation did not appear to him to require such a cautionary instruction. We agree.

The remark was different both by its nature, content and materiality from those remarks which have been found, per se, to have constituted prejudice. It was not one "screaming out for the forceful interdiction of the trial judge" as was found to have existed in *Reidy* and in *Conway.* The principles applied in *Clarke v. State, supra, Westcoat v. State, supra, Kellum v. State, supra, Wood v. State, supra, Glickman v. State, supra* and *Toomer v. State, supra,* are here controlling. The isolated remark which appears to have been the initiation of an appeal for law enforcement, or "for law and order," or unto the jury "to do their duty," did not mislead or influence the jury to the prejudice of the appellant.

The evidence concerning the appellant's guilt was not "close," but was rather "overwhelming." The remark was "unimportant" and there was "no evidence of a proceeding dominated by prejudice and passion." See *Wood v. State, supra.* Our examination of the entire proceedings compels the conclusion that the remark made in opening statement did not infect the defendant's trial with unfairness nor was it likely to prejudice him. *See Donnelly v. DeChristoforo, supra; Conway v. State, supra.*

Although the purpose of an opening statement is to apprise, with reasonable succinctness, the trier of facts of the questions involved and what is expected to be proven, such opening statement does not need to be limited to a factual recitation of what is expected to be elicited from the prospective witnesses. Counsel are entitled to make what rhetoricians call an exordium — that part of the opening intended to make the listeners heed you and to prepare them

for that which is to follow.[9] We do not mean to suggest that the performing artists be given a "broad range" in their efforts at advocacy. Each case must depend on its own peculiar facts and both counsel — for the prosecution as well as for the defense — are enjoined in their eloquence to circumspection, lest in their enthusiasm for their cause they create a condition which is likely or apt to instigate prejudice against the accused — or the prosecution.

Lord Halsbury, L. C., in *Sharp v. Wakefield* [1891] A.C. 173, 179, said:

> " 'Discretion' means when it is said that something is to be done within the discretion of the authorities that that something is to be done according to the rules of reason and justice, not according to private opinion; according to law, and not humour. It is to be, not arbitrary, vague, and fanciful, but legal and regular. And it must be exercised within the limit, to which an honest man competent to the discharge of his office ought to confine himself."

We find no abuse of the discretion vested in the trial court in refusing to grant a mistrial, nor any error in the court's failure, sua sponte, to give an instruction to the jury to disregard the comments made.

## The *Cook* Case

Although it is fundamental that the argument of counsel should at all times be confined to the questions in issue and the evidence relating thereto adduced at the trial and such inferences, deductions and analogies as can reasonably and properly be drawn therefrom, it is proper for counsel to argue to the jury — even though evidence of such facts has not been formally introduced — matters of common knowledge or matters of which the court can take judicial notice. *See* 53 Am. Jur. *Trial* §§ 480, 481 (1956).

---

**9.** *See* L. Stryker, The Art of Advocacy — A Plea for the Renaissance of the Trial Lawyer, Ch. III at 51 (1954).

The basic "boilerplate" in charging a jury concerning the weight to be given the evidence is that they are entitled, as jurors, to use their own common sense, their own experiences in life and their own knowledge of the ways and affairs of the world. *See* 88 C.J.S. *Trial* § 389 (1955). When the prosecutor in closing argument told the jury that "Last year some three hundred thirty people were murdered in Baltimore City," he made reference to a matter within their knowledge, proclaimed by bold headlines just 19 days previously.[10]

In a broad sense the term "judicial notice" is used to denote both judicial knowledge (which courts possess) and common knowledge (which every informed individual possesses); and matters of common knowledge may be declared applicable to the case without proof. See *Bone v. General Motors Corp.*, 322 S.W.2d 916, 924 (Mo. 1959), concerning "life expectancy" where the court observed that it would be unrealistic that the jury actually knew the plaintiff's expectancy, but that a jury would have actual knowledge, and common knowledge that a person 35 years of age with no constitutional diseases or abnormalities might be expected to live for a substantial number of years in the absence of unexpected calamity.

Jurors may be reminded of what everyone else knows, and they may act upon and take notice of those facts which are of such general notoriety as to be matters of common knowledge. *State v. Adams*, 1 Ariz. App. 153, 400 P. 2d 360, 362 (1965), citing *United Verde Extension Mining Co. v. Littlejohn*, 279 F. 223 (9th Cir. 1922); and 53 Am. Jur. *Trial* § 481 (1956).

In *People v. Scarborough*, 171 Cal.App.2d 186, 340 P. 2d 76 (1959), where the defendant was charged with kidnapping, rape and robbery, the prosecutor told the jury in closing argument: "Now, it is a terrible thing that a crime of this

---

10. The "Baltimore Sun" as well as the "Evening Sun" and the Baltimore "News-American" each, on January 18, 1973, carried prominent news accounts that 330 murders had been committed in Baltimore City in 1972 — seven more than had been committed in 1971; and reported as well that a total of 9,584 robberies had been committed in Baltimore City in 1972.

kind can occur on our streets, and when people read about things in newspapers, we know the remarks they make about it, 'What is this country coming to? ' and 'Something ought to be done.' In this case you have the opportunity to do what should be done with respect to at least one of such crimes." When counsel for the appellant interrupted by his objection, the court admonished counsel not to refer to any other cases at all.

The court, in its opinion, stated:

> "We do not believe that the remarks of the district attorney exceeded the bounds of legitimate argument, for as stated in People v. Gingell, 211 Cal. 532, at page 541, 296 P. 70, at page 73: 'It has been held in many cases that the range of discussion, illustration, and argumentation is very wide, and that matters of common knowledge may be referred to and allusion may be made to the prevalence of crime and the duty of the jury. People v. Burke, 18 Cal.App. 72, 102 P. 435, and cases there cited. * * *' " 340 P. 2d at 79.

The reference the prosecutor made to the number of murders committed in Baltimore in 1972 — based upon the widespread publicity given such data — was but a direction by him to the jury of a fact that was within their common knowledge.

*Compare State v. Williams,* 107 Ariz. 262, 485 P. 2d 832 (1971), where the prosecutor stated to the jury that "the crime rate went up in Phoenix last year 116%." The Arizona court, in pointing out that there was no data to support the bald statement made by the prosecutor, stated:

> "[I]t has been repeatedly held that a reference by the prosecuting attorney in his argument to the prevalence of crime is not improper. The range of discussion and argumentation is very wide and matters of common knowledge may be referred to and allusion may be made to the prevalence of crime and the duty of the jury. People v. Burke, 18

Cal.App. 72, 122 P. 435; People v. Scarborough, 171 Cal.App.2d 186, 340 P.2d 76; State v. Elbert, 438 S.W.2d 164 [Mo.]; and see Anno., 78 A.L.R. at 1467." 485 P. 2d at 834.

*See also Fair v. State,* 168 Ga. 409, 148 S. E. 144 (1929), where the prosecutor told the jury in final argument there were 561 murders in Georgia in 1922 and urged the imposition of the death sentence on the appellant. The Georgia court similarly pointed out that the statistics to which the Solicitor General referred were not matters of such common knowledge that the court could take judicial cognizance of their existence without proof, although the matter would be different if the subject-matter was one of such public notoriety that the court or jury could take judicial cognizance thereof.

Similarly, when the prosecutor here stated that he did not "know how many people were robbed in the city with weapons," he was again making reference to data widely publicized in the media and in effect asking the jurors for a "recall" of matters which were within their common knowledge and awareness.

That Charles Dean had been one of the people murdered in 1972 was established by the testimony; that he as well as James Conyer, affectionately called "Papa," were "defenseless" was a valid argument to be made from the evidence concerning the description about how Dean and Conyer had been set upon by four assailants. "Papa" (Conyer) was blind in one eye; he had borrowed a dollar with which to purchase a pint of Italian Swiss Colony wine — indeed, the alcoholic refreshment was his singular personal property taken by the robbers.

That the assailants could be described as "young toughs" was abundantly supported by the testimony concerning the manner of the confrontation of Dean and Conyer by their robbers and from the demeanor and nature of the testimony given by both the appellant Cook and a co-defendant, Michael Walter Beaty, who undertook to exonerate not only himself, but Cook as well, and from the demeanor and

appearance of another co-defendant, Leonard Mitchell Anderson, who, when called by the appellant, elected not to testify.

In *Ott v. State, supra,* the appellant, for the first time on appeal, made objection to two instances in the State's closing argument which he contended were prejudicial.

Judge Anderson, who delivered the opinion for the Court of Special Appeals, stated:

> "The first was when the prosecutor stated '* * * but I think that he (Mr. Ott) is the type of individual that fits the pattern of the State's theory of the case and that he is typically the type person who might do exactly what was done under the theory of the State's case.' Appellant contends that this refers to his prior convictions and it was therefore improper. A reading of the record discloses that this contention is not correct. It is apparent from the record that the prosecutor was referring to appellant's *demeanor* on the witness stand and *his actions at the time of the alleged crime.* The other instance was when the prosecutor stated that 'We are lucky we are not here today with a murder charge.' He then remarked that such situations *make Baltimore a big crime area.* We feel these remarks áre fair comment in argument and certainly do not merit reversal. They are neither misleading nor prejudicial to the appellant. See *Day v. State,* 2 Md. App. 334; *Holbrook v. State,* 6 Md. App. 265; *Chandler v. State,* 7 Md. App. 646." 11 Md. App. at 268, 273 A. 2d at 635. (Emphasis supplied.)

When the Assistant State's Attorney made reference to "young toughs" it is patent that in his argument he was referring to the demeanor of the appellant and two of his co-defendants called as witnesses in his behalf and the actions of the assailants at the time of the homicide and robbery.

In the early stages of Cook's trial — in connection with the

opening statement — the trial judge instructed the jury that what is said to them by the lawyers was "not evidence" ; he further advised the jury that anything said by counsel — whether for the State or the defense — in closing argument was "not evidence in the case," that "closing argument is exactly what the word implies; merely argument to persuade you . . ."

The assistant prosecutor at the beginning of his summation told the jury that the testimony from the witness stand and the evidence from the very exhibits "is all that you will use to determine your verdict," he again advised the jury that "what I am telling you now is not evidence."

What the Court observed in *Esterline v. State, supra,* "It is not to be presumed that a body of competent and honest men, sworn to try the issue of the traverse upon the evidence produced before them would permit the statement to influence their finding," is particularly applicable here in view of the fact that the jury was on three occasions advised — by the court and by the prosecutor — that the statements of counsel were not evidence.

In *Witcher v. State, supra,* Judge Thompson, writing for the Court of Special Appeals, stated:

"The rule in Maryland concerning the misstatements of law or fact in a closing argument is that unless it appears the jury was actually misled or was likely to have been misled or influenced to the prejudice of the accused, a reversal of a judgment of conviction will not be justified. *Holbrook v. State,* 6 Md. App. 265, 250 A. 2d 904. See *Reidy v. State,* 8 Md. App. 169, 259 A. 2d 66. If we assume the argument to have been improper, the trial court's instructions to the jury concerning statements and arguments of counsel not to be considered evidence, and his direction that they find their facts only from 'what you have heard from the witness stand and the exhibits which have been received,' sufficiently eliminated

any possibility of prejudice." 17 Md. App. at 439, 302 A. 2d at 708.

Lloyd Paul Stryker in "The Art of Advocacy — A Plea for the Renaissance of the Trial Lawyer" [11] concerning closing arguments stated:

> "The summation is the high point in the art of advocacy; it is the combination and the culmination of all of its many elements. It is the climax of the case. It is the opportunity to rescue a cause until that time perhaps seemingly lost. It calls for every skill the advocate possesses. It calls for more than skill — it is a summons to his courage, a testing ground of his character, a trial of his logic and reasoning powers, his memory, his patience and his tact, his ability to express himself in convincing words; in short, it is an assay of every power of persuasion he possesses. Small wonder, then, that there have been few great summations."

The facts here are inapposite to those in *Viereck v. United States*, 318 U. S. 236 (1943); *Brown v. United States*, 370 F. 2d 242 (D.C. Cir. 1966); *Handford v. United States*, 249 F. 2d 295 (5th Cir. 1957); *Turk v. United States*, 20 F. 2d 129 (8th Cir. 1927); and *People v. Sawhill*, 299 Ill. 393, 132 N. E. 477 (1921); (all cited by the appellant). *Viereck* was a prosecution for failing to register as a "foreign agent" and the United States Attorney made an impassioned plea reminding the jury, "This is war, harsh, cruel, murderous war," and that there were those plotting at that very moment their and his death. In *Brown* the prosecutor told the jury that unless they reached the conclusion that the defendants had assaulted the police officers "then this city [District of Columbia] must have martial law." In *Handford*, a prosecution for possessing untaxed liquor, where the evidence was circumstantial, in addition to the injection of a racial epithet, the prosecutor made an argument found to be prejudicial in blaming the defendant for drunken drivers

---

11. Ch. VI, The Closing Speech, pp 111.

responsible for highway accidents, particularly accidents to children. In *Turk*, another liquor law violation, the prosecutor argued that the defendant must have been a wholesale dealer in beer because he sold 100 to 300 bottles every other night and that "If a guilty man goes free you are adding more flame to the fire of the crime wave sweeping the country." In *Sawhill* the prosecutor made reference in his argument to lawless outbreaks of the inhabitants who had destroyed public buildings in other communities following the failure of juries to convict persons charged with atrocious crimes — where the defendant was being prosecuted for running a "confidence game."

The prosecutor in *Cook* in his closing argument made only reasonable and legitimate inferences from the facts which had been offered in evidence, from the facts which were of such general notoriety as to be matters of common knowledge and matters within the cognizance of the jury from their own observations.

The trial judge was similarly in the most advantageous position to evaluate from the remarks any potential prejudice to the defendant; by his rulings in refusing to grant a mistrial he found none. His cautionary instructions at the outset of the case when coupled with the statements of the prosecutor concerning the fact that what counsel stated was not evidence, did not from the exigencies of the situation require him, sua sponte, to give any additional cautionary advice to the jury. The facts in Cook's case are controlled by the principles applied in *Donnelly v. DeChristoforo, supra; Clarke v. State, supra; Wood v. State, supra; Cohen v. State, supra;* and *Esterline v. State, supra.*

Here, as well, the evidence against Cook was "overwhelming," there was "no evidence of a proceeding dominated by prejudice and passion." *See Wood v. State, supra.* Our examination of the entire proceedings convinces us that the remarks made in closing argument were not beyond the scope of permissible comment.

The statement of Mr. Justice Burton, who delivered the majority opinion for the United States Supreme Court in *Darcy v. Handy,* 351 U. S. 454 (1956), seems particularly

appropriate to the cases of both *Wilhelm* and *Cook*. He stated:

"While this Court stands ready to correct violations of constitutional rights, it also holds that 'it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality.' *Adams v. United States ex rel. McCann*, 317 U. S. 269, 281. See also, *Buchalter v. New York*, 319 U. S. 427, 431; *Stroble v. California*, 343 U. S. 181, 198. Justice Holmes, speaking for a unanimous Court in *Holt v. United States*, 218 U. S. 245, 251, cautioned that 'If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day.' " 351 U. S. at 462.

> *In No. 277: judgments affirmed; costs to be paid by the appellant, Wilhelm.*
>
> *In No. 283: judgments affirmed; costs to be paid by the appellant, Cook.*

*Levine, J., dissenting:*

Having concluded that appellant Wilhelm should be granted a new trial, I respectfully dissent in No. 277.

As the majority itself recognizes, if remarks made by the prosecuting attorney in an opening statement include facts that are plainly inadmissible, reversal will follow if the accused establishes " . . . bad faith in their making, *or* substantial prejudice resulting therefrom. . . ." *Clarke v. State*, 238 Md. 11, 20, 207 A. 2d 456 (1965) (emphasis added). Yet, neither the majority of this Court nor of the Court of Special Appeals fully applied that test to the statements

made here. Both have proceeded on the premise that, in any event, prejudice must be shown. I do not agree.

In resting their decision upon the absence of such prejudice, both courts have misapplied our earlier decision in *Wood v. State*, 192 Md. 643, 65 A. 2d 316 (1949). In that case, which involved comments made during argument to the jury rather than opening statement, we said:

> "It is quite true that appeals to class prejudice or to passion are improper and may so poison the minds of jurors that an accused may be deprived of a fair trial. However, unless it appears that the jury were actually misled or were likely to have been misled or influenced to the prejudice of the accused by the remarks of the State's Attorney, this Court will not be justified in reversing a judgment of conviction solely because of *intemperate remarks made in the ardor of advocacy. . . ."* 192 Md. at 652 (emphasis added).

We are not confronted here with mere "intemperate remarks made in the ardor of advocacy." It is difficult to imagine how that atmosphere could even exist at the very outset of a trial. The prosecutor was delivering the first paragraph of his opening statement, presumably only moments after the trial had commenced. Opening statements by the prosecuting attorney, or by plaintiff's counsel in a civil case, may well be the only "script" to be utilized in the trial of any case.

The remarks made here cannot be sloughed off as a mere "slip of the tongue" or as an "improvisation." Nor am I able to detect the "exigencies" referred to by the majority. On the contrary, one can only infer that the message intended to be conveyed by the prosecutor's words was " . . . carefully constructed *in toto* before the event. . . ." *Donnelly v. DeChristoforo*, 416 U. S. 637, 94 S. Ct. 1868, 1873, 40 L.Ed.2d 431 (1974). I agree with the majority below that the comments were improper *per se*, but I would also hold that they were made in bad faith and therefore compelled reversal, *Clarke v. State, supra*, 238 Md. at 20.

Furthermore, I think that there was error even if we apply "substantial prejudice" or "actual prejudice" as the test. This was a one-day trial, not a protracted proceeding. Thus, it does not stretch the imagination to assume that the words of the prosecutor were fresh in the minds of the jurors when they retired to deliberate. It is equally important to note that nothing was said to the jury following the objection by defense counsel. The jurors could logically have assumed from the court's silence following the bench conference that the objection had been overruled, thereby suggesting its approbation of the remarks.

A number of the authorities cited by the majority, almost all of which dealt with jury argument rather than opening statements, appear to have turned on whether the trial judge issued a curative instruction following improper comment. No such instruction was given here, and under the circumstances of this case that failure alone established prejudice. As the majority has noted in part, we said in *Contee v. State,* 223 Md. 575, 165 A. 2d 889 (1960):

"... We point out, however, that the State's Attorney has an obligation to refrain from making any remark within the hearing of the jury which is *likely or apt* to instigate prejudice against the accused. We further point out that, while the granting or refusal of a mistrial is a matter lying within the sound discretion of the trial court, the court, nevertheless, *in addition to sustaining an objection* to an improper remark or misconduct, is also entrusted with *further responsibility to caution or reprimand* the State's Attorney as the exigencies of the situation may require *and to forthwith instruct the jury* to disregard the unwarranted remarks and conduct of the prosecuting attorney." 223 Md. at 584 (emphasis added).

I find nothing in any of our other prior decisions that imposes an absolute requirement upon defense counsel to request a curative instruction. Given the impropriety of the

comments, which was tacitly recognized by the trial judge, the objection and motion were sufficient to cast upon the court the responsibility for curative action. The failure to properly instruct the jury at any time before it retired and the refusal to grant a mistrial, taken together, constituted an abuse of discretion. I would reverse and remand for a new trial. Judge Eldridge authorizes me to state that he concurs in this opinion.